500 S.E.2d 160

Vernon STAUBES, Appellant,

v.

**CITY OF FOLLY BEACH, City of Folly Beach Zoning Board of Adjustments, Tommy Bolus, Harvey Wittschen, Cindy Newman, Mrs. Schwacke, and Betty Minchew,**

**of whom City of Folly Beach is, Respondent.**

No. 2834.

Court of Appeals of South Carolina.

Heard April 7, 1998.
Decided April 27, 1998.
Rehearing Denied June 19, 1998.

194

Timothy A. Domin, of Clawson & Staubes, Charleston, for Appellant.

Thomas J. Wills, IV, and James E. Reeves, both of Barnwell, Whaley, Patterson & Helms, Charleston, for Respondent.

ANDERSON, Judge:

Vernon Staubes brought this action to recover damages he allegedly sustained due to the City of Folly Beach's refusal to grant him a permit to repair his duplex. The trial court granted the City's motion for summary judgment holding the City's actions did not (1) result in a taking of Staubes's property; (2) violate Staubes's right to due process; or (3) violate 42 U.S.C. § 1983. Additionally, the court found Staubes's negligence action was barred by the South Carolina Tort Claims Act.[1] We affirm in part, reverse in part, and remand.[2]

---

1. S.C.Code Ann. § 15–78–10, et seq. (Supp.1997).

2. At the summary judgment hearing, the parties stipulated to dismiss the following defendants: the City of Folly Beach Zoning Board of Adjustments, Tommy Bolus, Harvey Wittschen, Cindy Newman, Mrs.

## FACTS/PROCEDURAL BACKGROUND

The background of this case is reported in *Staubes v. City of Folly Beach,* Op. No. 94–UP–138 (S.C. Ct.App. filed April 27, 1994), as follows:

Vernon Staubes owns a two-story rental apartment building on Folly Beach. The building was damaged by Hurricane Hugo. Prior to being damaged, the building had a fair market value of $45,772.00.

After Hugo, Staubes secured a building permit from the City of Folly Beach to repair the building. The record reveals that, on Folly Beach, if the cost of repairing a damaged building equals or exceeds 50 per cent of the building's market value before it sustained damage, then the owner is prohibited from making repairs unless the existing building meets the requirements for new construction.

Harris Crowley, a licensed engineer, inspected the building and found its structural damage to be "in excess of fifty (50) per cent of the original design." Thereafter, the City of Folly Beach issued a condemnation order requiring Staubes to meet the City of Folly Beach's new construction standards.

Later, the County of Charleston took over the duties of building inspector for the City of Folly Beach. Staubes subsequently applied to the County of Charleston for another permit, and the County of Charleston granted it. Two months later, however, the County of Charleston revoked Staubes's permit after it learned the City of Folly Beach had revoked Staubes's first permit.

Staubes appealed to the City of Folly Beach Zoning Board of Adjustment. The Board upheld the revocation of the building permit, and Staubes appealed to the circuit court. The circuit court affirmed the Board's decision.

On appeal, Staubes contended the trial court erred in affirming the Board's decision to uphold the revocation of his building permit. This Court agreed and reversed, finding the evidence did not support the Board's finding the cost of repairs exceeded fifty percent of the building's market value.

---

Schwacke, and Betty Minchew with prejudice. Thus, they are not a part of this appeal.

*Staubes, supra.* The Court noted only Staubes submitted evidence of the cost of repairs. He submitted three bids, which were all less than fifty percent of the building's pre-Hugo market value. The Supreme Court dismissed the writ of certiorari as improvidently granted. *Staubes v. City of Folly Beach*, Op. No. 95–MO–209 (S.C. Sup.Ct. filed June 14, 1995).

After the Supreme Court dismissed the petition for certiorari, Staubes brought the present action against the City alleging the City's actions prevented him from performing any repairs on the property, leaving the property uninhabitable and unrentable during the appeal process. He averred the City's conduct deprived him of all beneficial use of the property without just compensation. In addition, Staubes claimed the City's action left the building open to the elements causing further damage to the structure. The trial court granted summary judgment to the City.

## ISSUES

I. Did the trial court err in granting summary judgment to the City as to the temporary taking issue?

II. Did the trial court err in granting summary judgment to the City as to the claim for deprivation of Staubes's due process rights pursuant to 42 U.S.C. § 1983 (Supp.1997)?

III. Did the trial court err in granting summary judgment to the City as to the negligence cause of action?

## STANDARD OF REVIEW

Summary judgment is appropriate when it is clear there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Summer v. Carpenter*, 328 S.C. 36, 492 S.E.2d 55 (1997); Rule 56(c), SCRCP. *See also Standard Fire Ins. Co. v. Marine Contracting and Towing Co.*, 301 S.C. 418, 392 S.E.2d 460 (1990)(motion for summary judgment shall be granted if pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and moving party is entitled to judgment as matter of law). In determining whether any triable issue of fact exists, as will preclude summary judgment, the evidence

and all inferences which can be reasonably drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Koester v. Carolina Rental Ctr., Inc.,* 313 S.C. 490, 443 S.E.2d 392 (1994). *See also Bates v. City of Columbia,* 301 S.C. 320, 391 S.E.2d 733 (Ct.App.1990)(in determining whether to grant summary judgment, pleadings and documents on file must be liberally construed in favor of nonmoving party who must be given benefit of all favorable inferences that might reasonably be drawn from record). If triable issues exist, those issues must go to the jury. *Rothrock v. Copeland,* 305 S.C. 402, 409 S.E.2d 366 (1991).

Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Tupper v. Dorchester County,* 326 S.C. 318, 487 S.E.2d 187 (1997); *Baugus v. Wessinger,* 303 S.C. 412, 401 S.E.2d 169 (1991). Even when there is no dispute as to evidentiary facts, but only as to the conclusions or inferences to be drawn from them, summary judgment should be denied. *Tupper, supra; Koester, supra.* However, when plain, palpable, and indisputable facts exist on which reasonable minds cannot differ, summary judgment should be granted. *Trico Surveying, Inc. v. Godley Auction Co.,* 314 S.C. 542, 431 S.E.2d 565 (1993). All ambiguities, conclusions, and inferences arising from the evidence must be construed most strongly against the movant. *Tupper, supra; Baugus, supra.*

## LAW/ANALYSIS

### I. Temporary Taking

■ Staubes argues the trial court erred in granting the City's motion for summary judgment because the actions of the City resulted in an unconstitutional temporary taking. We disagree.

The City asserts the South Carolina Supreme Court's decision in *Gasque v. Town of Conway,* 194 S.C. 15, 8 S.E.2d 871 (1940), *overruled on other grounds by McCall v. Batson,* 285 S.C. 243, 329 S.E.2d 741 (1985), is controlling in the present case. Gasque signed a contract with the Gulf Refining Company to build a filling station upon his lot and lease the property, with the building, to Gulf for a monthly rental fee. He then applied for a permit to build the filling station. The

Town Council refused to issue the permit. After Gasque obtained a writ of mandamus compelling issuance of the permit, he brought a takings action against the Town for the loss of rent and other damages he sustained due to the rejection of his application. The court found no taking had occurred. The Supreme Court held:

> In the case at bar, the town made no entry of any kind upon [Gasque's] lot. Nor did it subject the land to any burden or easement. All that the town did was to refuse to grant [Gasque] a permit to erect a filling station. In our opinion, by this negative act [the Town] did not "take" or appropriate [Gasque's] property for public use in a constitutional sense. To hold otherwise would be an unjustifiable extension of the meaning of the word, and would go far beyond its plain, natural and usual import. It seems evident that where the [T]own has made no entry on [Gasque's] lot, subjected it to no easement, nor placed it under any servitude, it has not taken the lot nor deprived [Gasque] of it.
>
> . . . .
>
> . . . Ordinarily the constitutional provision under consideration contemplates compensation for a "taking" or for damage which is permanent or presumably of a permanent nature, and growing out of a positive act or aggressive step. It was never intended to furnish a cause of action for every error of judgment committed or wrongful act perpetrated by a town council.

*Gasque,* 194 S.C. at 22–23, 8 S.E.2d at 874. The linchpin of *Gasque* is no constitutional taking because there was no deprivation of a "permanent nature."

■ The United States Supreme Court subsequently recognized a "taking" may be temporary. Temporary takings are as protected by the Constitution as are permanent ones. *See First English Evangelical Lutheran Church v. County of Los Angeles,* 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987); *Kirby Forest Indus., Inc. v. United States,* 467 U.S. 1, 104 S.Ct. 2187, 81 L.Ed.2d 1 (1984); *United States v. Dow,* 357 U.S. 17, 78 S.Ct. 1039, 2 L.Ed.2d 1109 (1958); *Kimball Laundry Co. v. United States,* 338 U.S. 1, 69 S.Ct. 1434, 93 L.Ed. 1765 (1949). In *First English Evangelical Lutheran Church,*

*supra,* the Court discussed "whether the Just Compensation Clause requires the government to pay for 'temporary' regulatory takings." *Id.* at 313, 107 S.Ct. at 2384, 96 L.Ed.2d at 263. The Court explained: " '[T]emporary' takings which ... deny a landowner *all* use of his property, are not different in kind from permanent takings, for which the Constitution clearly requires compensation." *Id.* at 318, 107 S.Ct. at 2388, 96 L.Ed.2d at 266 (emphasis added). The Court thus held "that where the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective." *Id.* at 321, 107 S.Ct. at 2389, 96 L.Ed.2d at 268. Further, the Court noted:

> [T]he allegation of the complaint which we treat as true for purposes of our decision was that the ordinance in question denied appellant all use of its property. We limit our holding to the facts presented, and of course do not deal with the quite different questions that would arise in the case of normal delays in obtaining building permits, changes in zoning ordinances, variances, and the like which are not before us. We realize that even our present holding will undoubtedly lessen to some extent the freedom and flexibility of land-use planners and governing bodies of municipal corporations when enacting land-use regulations. But such consequences necessarily flow from any decision upholding a claim of constitutional right; many of the provisions of the Constitution are designed to limit the flexibility and freedom of governmental authorities, and the Just Compensation Clause of the Fifth Amendment is one of them. As Justice Holmes aptly noted more than 50 years ago, "a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change." *Pennsylvania Coal Co. v. Mahon,* 260 U.S. [393] at 416, 43 S.Ct. 158 [at 160] 67 L.Ed. 322, 28 A.L.R. 1321.

*First English Evangelical Lutheran Church,* 482 U.S. at 321–22, 107 S.Ct. at 2389, 96 L.Ed.2d at 268.

The City demonstrates an indomitable will to resurrect *Gasque* to full vitality. We reject this misplaced clarion call in view of the enlightened and erudite writing encapsulated in

*First English Evangelical Lutheran Church,* which created a right of recovery for temporary nonpossessory takings.

■ "[T]he Fifth Amendment is violated when landuse [sic] regulation 'does not substantially advance legitimate state interests *or denies an owner economically viable use of his land.'*" *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1016, 112 S.Ct. 2886, 2894, 120 L.Ed.2d 798, 813 (1992)(emphasis in original). *See also McQueen v. South Carolina Coastal Council,* 329 S.C. 588, 496 S.E.2d 643 (Ct. App.1998). Staubes did not argue to the trial court, nor does he argue on appeal the City's actions did not substantially advance a legitimate state interest. We, therefore, need not consider this issue. Instead, the matter is determined by whether the City's action deprived Staubes of economically viable use of his property.

■ "[W]hen the owner of real property has been called upon to sacrifice *all* economically beneficial uses in the name of the common good, that is, to leave his property economically idle, he has suffered a taking." *Lucas,* 505 U.S. at 1019, 112 S.Ct. at 2895, 120 L.Ed.2d at 815 (emphasis in original). As the United States Supreme Court observed in *Lucas:*

Where the State seeks to sustain regulation that deprives land of all economically beneficial use, we think it may resist compensation only if the logically antecedent inquiry into the nature of the owner's estate shows that the proscribed use interests were not part of his title to begin with. This accords, we think, with our "takings" jurisprudence, which has traditionally been guided by the understandings of our citizens regarding the content of, and the State's power over, the "bundle of rights" that they acquire when they obtain title to property. It seems to us that the property owner necessarily expects the uses of his property to be restricted, from time to time, by various measures newly enacted by the State in legitimate exercise of its police powers; "[a]s long recognized, some values are enjoyed under an implied limitation and must yield to the police power." *Pennsylvania Coal Co. v. Mahon,* 260 U.S. at 413, 43 S.Ct. 158 [at 159] 67 L.Ed. 322. And in the case of personal property, by reason of the State's traditionally high degree of control over commercial dealings, he ought to

be aware of the possibility that new regulation might even render his property economically worthless (at least if the property's only economically productive use is sale or manufacture for sale). *See Andrus v. Allard,* 444 U.S. 51, 66–67, 100 S.Ct. 318, 327, 62 L.Ed.2d 210 (1979) (prohibition on sale of eagle feathers). In the case of land, however, we think the notion pressed by the Council that title is somehow held subject to the "implied limitation" that the State may subsequently eliminate all economically valuable use is inconsistent with the historical compact recorded in the Takings Clause that has become part of our constitutional culture.

*Lucas,* 505 U.S. at 1027–28, 112 S.Ct. at 2899–900, 120 L.Ed.2d at 820 (footnote omitted). *See also McQueen, supra.*

In support of his "temporary taking" argument, Staubes cites *Wheeler v. City of Pleasant Grove,* 833 F.2d 267 (11th Cir.1987), in which the court confronted the issue of how to calculate the compensation due when a temporary taking has occurred. In *Wheeler,* however, the court declared unconstitutional the zoning ordinance relied upon by the City of Pleasant Grove to prohibit construction of an apartment complex on property owned by the Wheelers. Thus, *Wheeler* is distinguishable from the case *sub judice.*

In this case, the City's actions did not deprive Staubes of *all* economically viable use of his land. Never in this dispute did the City inform Staubes he could not rebuild his house under any circumstances. Rather, the City informed Staubes he was required to comply with applicable building codes before he repaired his house. In his deposition, Staubes conceded that if he had complied with the applicable building codes in January of 1991, he could have rented the building on either a monthly or weekly basis. Staubes claimed he could have rented the house for prices that houses rented for in brochures he offered as exhibits. These prices ranged from $600 a week to $1,695 a week during the summer. Staubes had an economically viable use of the building available to him; albeit, he chose not to use it. Even though Staubes may not have been able to use the property as he desired, this limitation does not rise to the level of a constitutional taking.

Because Staubes was not deprived of all economically viable use of his property, the City's actions did not result in an

uncompensated taking of Staubes's property. Accordingly, the trial court did not err in granting summary judgment to the City as to the temporary taking issue.

## II. Due Process and Violation of 42 U.S.C. § 1983

Staubes argues the trial court erred in granting summary judgment to the City on the cause of action for deprivation of his due process rights pursuant to 42 U.S.C. § 1983 (Supp. 1997).[3] We disagree.

■ The City's actions did not result in a violation of Staubes's rights to procedural due process. The Fifth Amendment, which provides that private property may not be taken by the federal government without just compensation, is applicable to the states through the Fourteenth Amendment due process clause. *See Chicago, B. & Q.R. v. City of Chicago,* 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897); *Multi–Channel TV Cable Co. v. Charlottesville Quality Cable Corp., et al.,* 65 F.3d 1113 (4th Cir.1995). The Fourteenth Amendment provides in pertinent part no State shall "deprive any person of life, liberty, or property, without due process of law." In *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), the Court articulated:

Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property. *E.g., Davidson v. New Orleans,* 96 U.S. 97, 24 L.Ed. 616 (1877)(assessment of real estate); *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952)(stomach pumping); *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971)(suspension of driver's license); *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977)(paddling student); *Hudson v. Palmer,* [468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) ](intentional destruction of inmate's property). No

---

3. Pursuant to 42 U.S.C. § 1983 (Supp.1997):

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

decision of this Court before [*Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) ] supported the view that negligent conduct by a state official, even though causing injury, constitutes a deprivation under the Due Process Clause. This history reflects the traditional and common-sense notion that the Due Process Clause . . . was " 'intended to secure the individual from the arbitrary exercise of the powers of government.' "

*Daniels*, 474 U.S. at 331, 106 S.Ct. at 665, 88 L.Ed.2d at 668 (emphasis in original).

■ Our inquiry therefore must focus on whether Staubes has suffered a deprivation of property "without due process of law." A fundamental requirement of due process is the opportunity to be heard. *Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). "It is an opportunity which must be granted at a meaningful time and in a meaningful manner." *Id.* at 552, 85 S.Ct.at 1191, 14 L.Ed.2d at 66.

Staubes appealed the revocation of his building permit to the Folly Beach Zoning Board of Adjustment, the Circuit Court, this Court, and the South Carolina Supreme Court. It is unquestionable he was provided a meaningful opportunity to be heard. Staubes, therefore, did not suffer a violation of his right to procedural due process.

Staubes asserts numerous cases hold an uncompensated taking can amount to a due process violation under 42 U.S.C. § 1983. *See e.g., Hernandez v. City of Lafayette*, 643 F.2d 1188 (5th Cir.1981); *Westborough Mall, Inc. v. City of Cape Girardeau*, 794 F.2d 330 (8th Cir.1986). However, as stated above, the City's actions did not result in an uncompensated taking of his property. Consequently, the City's actions did not amount to a violation of Staubes's due process rights under this line of cases. The trial court, therefore, did not err in granting summary judgment to the City as to Staubes's cause of action under 42 U.S.C. § 1983.

## III. Tort Claims Act

Staubes argues the trial court erred in ruling his negligence claim was barred by the South Carolina Tort Claims Act. We agree.

■ The South Carolina Tort Claims Act, S.C.Code Ann. § 15–78–10, *et seq.* (Supp.1997), is a limited waiver of governmental immunity. *Moore v. Florence Sch. Dist. No. 1,* 314 S.C. 335, 444 S.E.2d 498 (1994). *See also* S.C.Code Ann. § 15–78–20(b) (Supp.1997)(while acting within scope of official duty, the State, its political subdivisions, and employees are immune from liability and suit for any tort except as waived by Tort Claims Act); S.C.Code Ann. § 15–78–40 (Supp. 1997)("The State, an agency, a political subdivision, and a governmental entity are liable for their torts in the same manner and to the same extent as a private individual under like circumstances, subject to the limitations upon liability and damages, and exemptions from liability and damages, contained herein .").

South Carolina Code Ann. § 15–78–60 (Supp.1997) sets out thirty two exceptions to the waiver of sovereign immunity. *Etheredge v. Richland Sch. Dist. I,* 330 S.C. 447, 499 S.E.2d 238 (Ct.App.1998). Subsection (12) of § 15–78–60 provides a governmental entity is not liable for loss resulting from "licensing powers or functions including, but not limited to, the issuance, denial, suspension, renewal, or revocation of or failure or refusal to issue, deny, suspend, renew, or revoke any permit, license, certificate, approval, registration, order, or similar authority *except* when the power or function is exercised in a *grossly negligent* manner." S.C.Code Ann. § 15–78–60(12) (Supp.1997) (emphasis added).

South Carolina courts have defined gross negligence in a number of ways. Gross negligence is the intentional, conscious failure to do something which one ought to do or the doing of something one ought not to do. *Clyburn v. Sumter County School Dist. # 17,* 317 S.C. 50, 451 S.E.2d 885 (1994); *Hollins v. Richland County Sch. Dist. One,* 310 S.C. 486, 427 S.E.2d 654 (1993); *Richardson v. Hambright,* 296 S.C. 504, 374 S.E.2d 296 (1988); *Ford v. Atlantic Coast Line R.R.,* 169 S.C. 41, 168 S.E. 143 (1932), *aff'd* 287 U.S. 502, 53 S.Ct. 249, 77 L.Ed. 457 (1933); *Brooks v. Northwood Little League, Inc.,* 327 S.C. 400, 489 S.E.2d 647 (Ct.App.1997); *Rakestraw v. South Carolina Dept. of Highways, and Public Transp.,* 323 S.C. 227, 473 S.E.2d 890 (Ct.App.1996); *Smart v. Hampton County School Dist. No. 2,* 315 S.C. 192, 432 S.E.2d 487 (Ct.App.1993). Gross negligence is a relative term which

means the absence of care that is necessary under the circumstances. *Hollins, supra; Hicks v.. McCandlish,* 221 S.C. 410, 70 S.E.2d 629 (1952); *Moore v. Berkeley County Sch. Dist.,* 326 S.C. 584, 486 S.E.2d 9 (Ct.App.1997); *Rakestraw, supra; Smart, supra.* It connotes the failure to exercise a slight degree of care. *Wilson v. Etheredge,* 214 S.C. 396, 52 S.E.2d 812 (1949); *Moore, supra; Grooms v. Marlboro County Sch. Dist.,* 307 S.C. 310, 414 S.E.2d 802 (Ct.App.1992). Gross negligence is the failure to exercise slight care. *Clyburn, supra; Hollins, supra; Richardson, supra; Anderson v. Ballenger,* 166 S.C. 44, 164 S.E. 313 (1932); *Doe v. Orangeburg County Sch. Dist. No. 2,* 329 S.C. 221, 495 S.E.2d 230 (Ct.App. 1997); *Rakestraw, supra; Smart, supra.* Where a person is so indifferent to the consequences of his conduct as not to give slight care to what he is doing, he is guilty of gross negligence. *Grooms, supra; Jackson v. South Carolina Dep't of Corrections,* 301 S.C. 125, 390 S.E.2d 467 (Ct.App.1989), *aff'd* 302 S.C. 519, 397 S.E.2d 377 (1990). Gross negligence involves a conscious failure to exercise due care. *Jackson, supra.*

 The exceptions under the Act must be construed liberally in favor of limiting the liability of the State and its political subdivisions. S.C.Code Ann. § 15–78–20(f) (Supp. 1997). *See also Rice v. Sch. Dist. of Fairfield,* 317 S.C. 87, 452 S.E.2d 352 (Ct.App.1994)(Tort Claims Act contains numerous exceptions to its waiver of sovereign immunity, and such exceptions must be construed liberally in favor of limiting liability of state and its political subdivisions). Yet, the burden of establishing a limitation upon liability or an exception to the waiver of immunity is upon the governmental entity asserting it as an affirmative defense. *Strange v. South Carolina Dept. of Highways and Public Transp.,* 314 S.C. 427, 445 S.E.2d 439 (1994); *Etheredge, supra; Doe v. Orangeburg County Sch. Dist. No. 2,* 329 S.C. 221, 495 S.E.2d 230 (Ct.App. 1997); *Wooten v. South Carolina Dep't of Transp.,* 326 S.C. 516, 485 S.E.2d 119 (Ct.App.1997).

 Gross negligence is a mixed question of law and fact and should be presented to the jury unless the evidence supports only one reasonable inference. *Clyburn v. Sumter County Sch. Dist. # 17,* 317 S.C. 50, 451 S.E.2d 885 (1994); *Etheredge, supra; Doe, supra.*

When Staubes appealed the permit revocation issue to the City of Folly Beach Zoning Board of Adjustment, the Board found Staubes's building sustained damage of greater than fifty percent of its pre-Hugo market value. The Board's finding related to the building's *structural damage.* However, there was no evidence to support the Board's finding the "*cost of repair,*" the only relevant standard in the ordinance relied upon, was greater than fifty percent of the building's value before Hugo. To the contrary, Staubes submitted estimates of three contractors: (1) BBC Construction, Inc., estimated the cost of repair at $12,739; (2) Milligan & Milligan, Inc., estimated the cost of repair was $15,568.30; and (3) House Check Inspection and Repair Service estimated the cost of repair at $17,400. These estimates related directly to the "*cost of repair.*" Further, the three estimates indicated repair costs did not equal or exceed fifty percent of the building's pre-Hugo market value. Finally, the City's actions were based solely on the opinion of an engineer who was not licensed to practice in South Carolina. Concomitantly, the City failed to make any showing whatsoever to substantiate the revocation of Staubes's building permit.

Moreover, at the summary judgment hearing, the City offered no affidavits or supporting materials suggesting its actions were reasonably consistent with accepted standards or otherwise in conformity with what a reasonable governmental entity would do under the circumstances. Viewing the evidence in the light most favorable to Staubes, we conclude genuine issues of material fact exist as to whether the City acted in a grossly negligent manner. Hence, the trial court erred in granting the City summary judgment on Staubes's negligence claim.

## CONCLUSION

For the foregoing reasons, the trial court did not err in granting summary judgment to the City as to Staubes's temporary takings claim and § 1983 cause of action. On the other hand, we hold the trial court erred in granting summary judgment to the City as to the negligence cause of action. Therefore, we reverse and remand as to this issue.

**AFFIRMED IN PART; REVERSED IN PART and RE-MANDED.**

HUFF and HOWARD, JJ., concur.