627 S.E.2d 690

**WILLIAMSBURG RURAL WATER AND SEWER COMPANY, INC., Petitioner,**

v.

**WILLIAMSBURG COUNTY WATER AND SEWER AUTHORITY, a Body Politic, County of Williamsburg, a Body Politic, and Town of Kingstree, a Body Politic, Respondents.**

No. 26107.

Supreme Court of South Carolina.

Heard Nov. 16, 2005.

Decided Feb. 6, 2006.

Rehearing Denied March 22, 2006.

Larry G. Reddeck, of Nettles, Turbeville & Reddeck, of Lake City, for Petitioner.

W.E. Jenkinson, III, and Ernest J. Jarrett, both of Jenkinson, Jarrett and Kellahan, of Kingstree, for Respondents.

Justice PLEICONES:

We granted certiorari to consider a Court of Appeals decision upholding the grant of summary judgment to respondents (County).[1] *Williamsburg Rural Water & Sewer Co., Inc. v. Williamsburg County Water & Sewer Auth.*, 357 S.C. 251, 593 S.E.2d 154 (Ct.App.2003).[2] We reverse the Court of Appeals insofar as it affirmed summary judgment on Company's statutory interpretation claim.[3]

## FACTS

The material facts are not in dispute, and a complete recounting may be found in the Court of Appeals' opinion. We have recited a briefer version below.

In January 1995, one of Company's organizers [4] sent a letter to County's Supervisor notifying County of Company's intent to provide water and sewer services in a portion of County's

---

1. For purposes of this opinion we will refer to respondents collectively as 'County.'

2. This *en banc* opinion was filed following the grant of a petition for rehearing. Chief Judge Hearn authored the majority opinion. Judge Anderson filed a separate concurrence, as did Judge Stilwell. Judge Connor joined Judge Stilwell's concurrence.

3. We dismiss certiorari as improvidently granted on the Tort Claims Act issue.

4. Company did not file its articles of incorporation until May 1995. The date of incorporation does not affect the analysis.

unincorporated area. In March and April 1995, the organizer appeared before County Council to reiterate Company's plan.

The circuit court held the January letter, as well as the March council appearance, satisfied the notice requirements of S.C.Code Ann. § 33–35–90, and that County's failure to respond within the statutory period was the equivalent of consent. Section 33–35–90, repealed in October 2000 and replaced by § 33–36–270,[5] provided in relevant part:

[P]rior to providing any of the services authorized in this section, nonprofit corporations or groups intending to organize such corporations shall first notify the governing body, of the county or municipality in which the services are to be provided, of their intentions and the nature of such services. *The governing body shall, from the date of such notification, have a period of ninety days in which to approve the request to provide such services or inform the persons requesting permission to provide such services that the governing body intends to provide for such matters as a public function of the government. Any such notification of intent by the governing body shall include a detailed description of the area to be served, the services to be provided and the time schedule under which such services will be available from the county or municipality.*

(Emphasis supplied).

County has not challenged the finding that it received the statutory notice on January 16, 1995, or that it was deemed to have consented to Company's proposal.

While County did not affirmatively respond to Company's notice, it took up a franchising ordinance (Franchising Ordinance) which would permit it to grant water and sewer franchises in County, including the area Company wished to service. The Franchising Ordinance received its first reading on March 6, 1995, its second in June, and its third in August, and was adopted on August 7, 1995. In October 1995, Company was notified that its application for funding from the federal government could not be processed until it received a franchise pursuant to the Franchising Ordinance. More than

---

**5.** The repeal/replacement does not affect our analysis of the nature of the rights acquired by a not-for-profit corporation pursuant to § 33–35–90.

one year later, in November 1996, a referendum allowing County itself to provide water and sewer services in Company's area passed.

In May 1998, County and/or its Water and Sewer Authority applied for federal funding to construct its system. In November 1998, it solicited bids to construct facilities in an area within Company's area, and awarded a construction contract that month. This suit followed.

Among Company's claims was that it had acquired an exclusive right to provide water and sewer services in the area identified in its 1995 notice by operation of § 33–35–90. The circuit court granted County summary judgment on this claim, and the Court of Appeals affirmed. We reverse.

## ISSUE

Whether County was entitled to summary judgment on the statutory interpretation issue?

## ANALYSIS

The Court of Appeals' majority held that summary judgment was properly granted to County because while Company acquired the right to provide service in the area specified in its January 1995 letter by virtue of § 33–35–90, nothing in that statute provided that the right was exclusive. The Court of Appeals was persuaded of this conclusion, at least in part, because Company has no existing facilities. The Court of Appeals' majority seemed to rest its decision on the fact that other providers were up and operating in the contested area:

The difficulty of this case lies in giving effect to the rights acquired by [Company] as a result of the County's failure to comply with section 33–35–90. If this statute is to have any meaning, there must be some enforceable quality belonging to those rights; otherwise, a party obtaining approval under this statute receives, in effect, nothing at all. Complicating the matter is the fact that during the pendency of this appeal, the County awarded numerous franchises affecting the disputed area, and those facilities are presently under development for the benefit of the people of Williamsburg County. Thus, in this case, valid but competing interests

are diametrically opposed. An unfortunate result of our ruling today is that [Company] likely possesses a right which has little commercial value in light of the County's intrusion into the designated service area. Nevertheless, in the absence of case law on point, and without specific language in section 33–35–90 compelling the grant of exclusive rights, we hold that [Company] does not possess an exclusive service right within the described service area; rather, as the circuit court found, it possesses a non-exclusive service right.

*Williamsburg Water,* 357 S.C. at 263, 593 S.E.2d at 161.

■■■■ Company complains, and we agree, that the Court of Appeals' majority improperly rested its decision in large part not on evidence in the record, but rather on the affidavit of John Whiteside, Director of the County Water & Sewer Authority, which was attached to County's petition for rehearing filed after the first Court of Appeals' decision in this case. In this affidavit, dated April 9, 2003, Mr. Whiteside described numerous projects planned and/or funded in the service area in dispute. Nothing in the appellate court rules permits a party to unilaterally add after-created evidence to the record. We review the summary judgment issue using only the evidence presented to the trial court and included in the Record on Appeal. In addition, we know of no authority for the proposition that a court should construe a statute not by its terms, but rather by weighing competing interests.

■■] The statute does not state that the right to provide water and sewer services in the area identified by the not-for-profit company is exclusive. In our view, the statute's silence is the strongest argument for interpreting § 33–35–90 to grant a non-exclusive right. On the other hand, the statute gives the governmental body ninety days either to accept the not-for-profit's offer to provide the services, or to decide to offer comparable services itself. The purpose of the statute is to expedite the provision of these vital services to unserved areas; it encourages a not-for-profit corporation to step into a governmental void, but effectively gives the local government veto power, permitting it to trump the not-for-profit's offer by making its own proposal within a short time period.

We hold that once the local government fails to respond within the time period provided for by the statute, the not-for-profit's right to operate in the specified area is exclusive. As the record in this case so amply demonstrates, anything less than an exclusive right to operate in the area will cause federal funding programs to deny assistance to the not-for-profit corporation. The purpose of the statute, to expedite the provision of water and sewer services to unserved areas, is frustrated by anything less than an exclusive right. *Cf. Johnston v. S.C. Dep't of Labor, Licensing and Reg.*, 365 S.C. 293, 617 S.E.2d 363 (2005) (statutes should be interpreted to further, not frustrate, legislature's intention).

 Where the governmental agency consents[6] to the not-for-profit corporation's notice pursuant to S.C.Code Ann. § 33–35–90 or § 33–36–270, that corporation acquires the exclusive right to operate water and sewer systems in the designated areas. Such an operation is in the nature of a quasi-public utility, as evidenced by the unique condemnation provisions applicable only to these type corporations. S.C.Code Ann. § 4–9–30(4) (Supp.2004). We therefore reverse the Court of Appeals' decision which affirmed the circuit court order granting County summary judgment on Company's statutory interpretation claim, and remand the case for further proceedings.

## CONCLUSION

The decision of the Court of Appeals affirming summary judgment on the statutory interpretation claim is

REVERSED.

MOORE, BURNETT, JJ. and Acting Justice PAULA H. THOMAS, concur.

TOAL, C.J., concurring in part and dissenting in part in a separate opinion.

---

6. This consent provision satisfies the requirement of S.C. Const. art. VIII, § 15 (1976).

Chief Justice TOAL, concurring in part and dissenting in part:

I concur in part and respectfully dissent in part. Although I agree with the majority's reversal of the statutory interpretation issue, I would not dismiss certiorari as improvidently granted on the Torts Claim Act (TCA) issue. In my view, there exists a material issue of fact regarding the possible gross negligence on the part of the County and the application of the TCA. Further, the result articulated by the majority effectively forecloses Company from pursuing any remedy for the violation of the exclusive right to which the majority finds Company is entitled. Therefore, I would reverse the circuit court's order in its entirety and remand for further proceedings.

The TCA provides that the State, its agencies, political subdivisions, and other governmental entities are immune from tort liability for specific losses including those resulting from:

> licensing powers or functions including, but not limited to, the issuance, denial, suspension, renewal, or revocation of or failure or refusal to issue, deny, suspend, renew, or revoke any permit, license, certificate, approval, registration, order, or similar authority *except when the power or function is exercised in a grossly negligent manner.*

S.C.Code Ann. § 15–78–60(a)(12)(2005) (emphasis added). Although the gross negligence standard contained in this exception is not expressly contained in the other exceptions upon which the County relies,[7] we read the gross negligence standard into all of the relevant TCA exceptions. *Staubes v. City of Folly Beach,* 339 S.C. 406, 417 529 S.E.2d 543, 548 (2000) (quoting *Steinke v. SC Dep't of Labor, Licensing, and Regulation,* 336 S.C. 373, 398, 520 S.E.2d 142, 155 (1999)). Therefore, the dispositive issue is whether the evidence presents an issue of material fact regarding gross negligence.

"Gross negligence is the intentional, conscious failure to do something which one ought to do." *Staubes v. City of Folly Beach,* 331 S.C. 192, 204, 500 S.E.2d 160, 167 (Ct.App.1999), *aff'd,* 339 S.C. 406, 529 S.E.2d 543 (2000). Additionally, under

---

7. County also relies on the exceptions found in §§ 15–78–60(a)(1), (2), (3), and (4) as grounds for immunity to company's tort action.

§ 15–78–60(a)(12), gross negligence is a mixed question of law and fact which must be determined by a jury. *Id.* at 205, 500 S.E.2d at 168. Unless there is only one reasonable inference to be drawn from the evidence, summary judgment is inappropriate. *Id.*

In the instant case, County was provided with notice of Company's intention to provide service to certain rural areas of the county in accordance with § 33–35–90. This section also provides that County was to respond to Company within ninety days indicating whether County intended to provide the services as a public function, including "a detailed description of the area to be served, the services to be provided, and the time schedule under which such services will be available from the county. . . ." *Id.*

County contends that its initial reading of a franchise ordinance within the ninety day period combined with the fact that the second reading was postponed to consult with legal counsel shows that County did not act with gross negligence. In opposition, Company points to several acts by County to show that County intentionally frustrated Company's efforts to provide service to the area including the denial of Company's application for a franchise ordinance. In my view, deciding between these competing factual scenarios is the hallmark of the function of a jury, and it should be the jury's job to determine whether County's actions rise to the level of gross negligence.

Therefore, in my view, the TCA issue should be submitted to a jury for a determination of whether the County acted with gross negligence. The evidence in this case does not lead to only one reasonable inference, especially when all ambiguities, conclusions, and inferences arising from the evidence are construed in favor of the nonmoving party. Furthermore, I find it perplexingly odd that, on one hand, the majority finds that Company's rights have been violated by County, and on the other hand, the majority deprives Company of any possibility of relief. If Company is unable to proceed in its tort action, there is no other remedy for the violation of its rights.

Accordingly, for the foregoing reasons outlined above, I would reverse the grant of summary judgment and remand the case for trial.