522 S.E.2d 605

**MARIETTA GARAGE, INC., Appellant,**

v.

**SOUTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, Respondent.**

**No. 3044.**

Court of Appeals of South Carolina.

Heard June 8, 1999.

Decided Sept. 7, 1999.

Rehearing Denied Nov. 17, 1999.

---

134

Robert C. Childs, III, of Mitchell, Bouton, Duggan, Yokel & Childs, of Greenville, for appellant.

Ronald K. Wray, II, of Gibbes, Gallivan, White & Boyd, of Greenville, for respondent.

HUFF, Judge:

Marietta Garage, Inc. (Marietta) seeks reversal of the South Carolina Department of Public Safety's (the Department's) decision to remove Marietta from the wrecker rotation list established through the South Carolina Highway Patrol (SCHP). The circuit court upheld the Department's decision. Marietta appeals. We affirm in part and reverse in part.

## FACTS

The Department's SCHP division maintains a rotation list of wreckers complying with certain regulations. The list is divided into zones. Marietta held a spot on zone five's rotation list and used Fender Mender's lot on 205 North Pleasantburg Drive in Greenville, South Carolina, as a storage location. Upon placement on the rotation list, Marietta received and signed a letter outlining the Department's sanction procedure. The letter stated that if the Department received a complaint against a wrecker service, written notice would be provided to

the wrecker service, and it would have an opportunity to request an administrative hearing. The letter stated that no sanction would begin earlier than fifteen days after notice.

On or about February 8, 1996, Chris Busha had a car accident. Marietta answered SCHP's call to tow the vehicle. Pritchett, Marietta's president, testified he towed Busha's car to the Pleasantburg Drive location but upon arrival found the locks changed and Marietta's sign taken down. Pritchett then took Busha's car to Marietta's home office in Marietta, South Carolina.

Busha's mother called SCHP to locate Busha's car. SCHP told her Marietta towed Busha's car to the Pleasantburg Drive location. When Busha's mother went to retrieve the car, Fender Mender's owner, Jeff Ryback, told her Marietta no longer parked cars at the Pleasantburg Drive lot and that Marietta towed Busha's car to Marietta, South Carolina. On February 15, 1996, Busha's mother filed a formal complaint against Marietta for towing the car outside zone five and charging excessive fees.

Lieutenant Darrell Green Kimbrell coordinated the wrecker services for zone five. On February 15, 1996, he went to the Pleasantburg Drive location to investigate Busha's complaint. Kimbrell spoke with Ryback, who confirmed Marietta no longer used the lot for storing towed cars. Kimbrell then told SCHP's dispatcher to "flag" Marietta and cease calling it until the issue was resolved. Kimbrell never called Marietta to resolve the problem.

On February 20, 1996, Kimbrell wrote a memo to Captain Reid informing him of Busha's complaint and of the determination that Marietta no longer maintained a physical location in zone five. On February 23, 1996, SCHP drafted a letter advising Marietta that its Pleasantburg location was removed from the wrecker rotation list effective February 16, 1996, for failing to maintain a storage location within the zone as required by regulation. Kimbrell testified that when he delivered the letter to Pritchett, Pritchett never mentioned any other locations in zone five. Kimbrell and Captain Reid conceded the regulations do not explicitly require notifying SCHP of a change in address but testified any new location must be inspected and approved by SCHP.

Pritchett testified he first learned Fender Mender locked Marietta out the night he attempted to tow Busha's car to the Pleasantburg Drive location. Pritchett testified he immediately attempted to procure a new location in zone five. Although Pritchett admits the regulations require maintaining a storage location within a zone in order to remain on the rotation list, Pritchett never informed SCHP it lost its Pleasantburg Drive location. Pritchett testified he had two other locations "lined up" in zone five when he received the Department's removal letter but never notified the Department of the locations and never requested an inspection even though he knew the Department required inspections for new locations.

Marietta appealed the decision removing it from the wrecker rotation list. On June 10, 1996, SCHP conducted an administrative hearing and upheld Marietta's removal. On November 26, 1996, Colonel Caulder of the Department upheld the administrative decision removing Marietta from zone five's rotation list.

Marietta filed suit alleging the Department violated Marietta's state and federal procedural due process rights and acted with gross negligence in removing Marietta from the rotation list without a pre-removal hearing. The complaint also appealed SCHP's administrative hearing. The Department denied the allegations. Marietta subsequently amended its complaint to correct the caption but the amended complaint omitted Marietta's administrative appeal.

Both Marietta and the Department moved for summary judgment. The circuit court granted the Department summary judgment, holding Marietta failed to establish a property interest in remaining on the rotation list because Marietta ceased operating at the only approved location in zone five. The circuit court also granted the Department summary judgment on Marietta's gross negligence claim but refused to award the Department sanctions. The circuit court denied Marietta's motion to reconsider. Marietta appeals. We reverse in part and affirm in part.

## DISCUSSION

### I.

Under the South Carolina Administrative Procedures Act (APA), this Court may not substitute its judgment for that of

a state agency as to the weight of the evidence on questions of fact. *Long Cove Home Owners' Assoc. v. Beaufort County Tax Equalization Bd.,* 327 S.C. 135, 139, 488 S.E.2d 857, 860 (1997); S.C.Code Ann. § 1–23–380(A)(6) (Supp.1998). However, we may reverse or modify an agency decision which is clearly erroneous in view of the substantial evidence on the whole record, in violation of a constitutional or statutory provision, or arbitrary. *Long Cove,* 327 S.C. at 139, 488 S.E.2d at 860; S.C.Code Ann. § 1–23–380(A)(6) (Supp.1998).

██ Marietta contends the circuit court erred in failing to conclude the APA required the Department to provide Marietta notice and an opportunity to be heard before removing it from the rotation list. We agree.[1]

The APA sets forth the following relevant provision:

(c) No revocation, suspension, annulment, or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee was given an opportunity to show compliance with all lawful requirements for the retention of the license. If the agency finds that public health, safety or welfare imperatively requires emergency action, and incorporates a finding to that effect in its order, summary suspension of a license may be ordered pending proceedings for revocation or other action. These proceedings shall be promptly instituted and determined.

S.C.Code Ann. § 1–23–370(c) (1986). The APA defines a "license" as including "the whole or part of any agency permit, franchise, certificate, approval, registration, charter, or similar form of permission required by law, but it does not include a

---

1. We note Marietta's APA claim is preserved despite its omission from the amended complaint because Marietta raised the issue in its motion for summary judgment and Rule 59 motion without any objection from the Department. *See McCurry v. Keith,* 325 S.C. 441, 447, 481 S.E.2d 166, 169 (Ct.App.1997) ("When issues not raised in the pleadings are tried by consent, they will be treated as if they had been raised in the pleadings."); *see also* Rule 15(b), SCRCP ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings ... [and] failure so to amend does not effect the result of the trial of these issues.").

license required solely for revenue purposes." S.C.Code Ann. § 1–23–310(4) (Supp.1998).

At the June 10, 1996, administrative hearing, the hearing officer cited the APA as authority for the post-removal hearing. However, the Department failed to comply with the APA's requirements. The APA specifically requires the Department to notify Marietta of the facts allegedly warranting removal from the rotation list and provide an opportunity to prove compliance with all requirements prior to instituting an agency proceeding. *See* S.C.Code Ann. § 1–23–370(c) (1986). The Department failed to notify Marietta of its removal from the rotation list until at least seven days after the removal. The Department thus violated the APA because it failed to give adequate notice and failed to provide an opportunity for Marietta to contest the Department's decision prior to removal.

Our conclusion is buttressed by the fact that the regulations governing the wrecker service do not explicitly require a wrecker service to notify the Department if a storage location is moved within a zone nor do the regulations explicitly require inspection before inclusion on the rotation list. 25A S.C.Code Ann.Regs. § 63–600 (1989).[2] The only location requirement contained in the regulations requires maintaining a safe storage area located within the zone. 25A S.C.Code Ann.Regs. § 63–600(3) & (8) (1989). Kimbrell testified a wrecker service would not be in violation of the regulations if it moved to another location within the zone because no regulation explicitly requires notifying the Department if a wrecker service moves locations within a zone. Furthermore, regulation 63–600(B) provides that "[f]ailure of any wrecker service to comply with the regulations as stated *may* result in their removal" from the rotation list. 25A S.C.Code Ann. Regs. § 63–600(B) (1989) (emphasis added). The term "may" illustrates that failure to comply with the regulations does not require automatic removal and, at least implicitly, indicates the invocation of some investigatory process before removal.

---

**2.** The South Carolina Legislature subsequently repealed these provisions. 25A S.C.Code Ann.Regs. § 63–600 (Supp.1998). Similar provisions are now found at 23A S.C.Code Ann.Regs. § 38–600 (Supp.1998).

When the Department removed Marietta from the rotation list, the Department had information that Marietta no longer conducted business at the Pleasantburg Drive location. The Department did not know, and failed to investigate, whether Marietta possessed another location within the zone meeting the regulatory requirements. A pre-removal administrative hearing would have easily verified whether Marietta maintained a location within Zone five. The Department's failure to provide Marietta notice and a hearing prior to actual removal violated the APA.

Therefore, we reverse the circuit court order granting the Department summary judgment and remand to the trial court.

## II.

Marietta further contends the circuit court erred in granting the Department summary judgment on Marietta's gross negligence claim. We disagree.

"Summary judgment is appropriate when it is clear there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Staubes v. City of Folly Beach*, 331 S.C. 192, 196, 500 S.E.2d 160, 163 (Ct.App. 1998); Rule 56(c), SCRCP; *see also Standard Fire Ins. Co. v. Marine Contracting and Towing Co.*, 301 S.C. 418, 421, 392 S.E.2d 460, 462 (1990) (noting a motion for summary judgment shall be granted if pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and moving party is entitled to judgment as matter of law).

Marietta contends genuine issues of material fact exist regarding whether the Department acted with gross negligence in removing Marietta from the rotation list without a pre-removal hearing. We disagree.

South Carolina courts define gross negligence as the intentional, conscious failure to do something which one ought to do or the doing of something one ought not to do; a relative term which means the absence of care that is necessary under the circumstances; the failure to exercise a slight degree of care; and where a person is so indifferent to the consequences

of his conduct as not to give slight care to what he is doing. *Staubes,* 331 S.C. at 204–5, 500 S.E.2d at 167.

■ Kimbrell's physical investigation of Marietta's former storage location and hand delivery of the removal notice to Marietta indicate at least a slight degree of care thus barring a claim for gross negligence. We affirm the order granting the Department summary judgment on Marietta's gross negligence claim. *See Clyburn v. Sumter County Sch. Dist.,* 317 S.C. 50, 53, 451 S.E.2d 885, 887–8 (1994) (holding that gross negligence ordinarily is a mixed question of law and fact but when the evidence supports but one reasonable inference, the question becomes a matter of law for the court).

Because we reverse on the APA claim, we do not address Marietta's constitutional due process issue. Pursuant to the above analysis, we

**AFFIRM IN PART AND REVERSE IN PART.**[3]

HOWELL, C.J., and HOWARD, J., concur.

---

**3.** We do not address the Department's additional sustaining ground argument because we affirm the circuit court order granting the Department summary judgment on Marietta's gross negligence claim.