572 S.E.2d 306

**MARIETTA GARAGE, INC., Appellant,**

v.

**SOUTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, Respondent.**

**No. 3557.**

Court of Appeals of South Carolina.

Heard Sept. 10, 2002.

Decided Oct. 28, 2002.

---

Robert C. Childs, III, Esq., Laura W.H. Teer, of Greenville; for Appellant.

Ronald K. Wray, II, Esq., Andrea Hawkins, of Greenville; for Respondents.

GOOLSBY, J.:

Marietta Garage, Inc., appeals the grant of summary judgment to the South Carolina Department of Public Safety in an action for damages Marietta allegedly sustained from the removal of its name from a wrecker rotation list. We affirm.

## FACTS AND PROCEDURAL HISTORY

The South Carolina Highway Patrol, pursuant to regulations promulgated by the South Carolina Department of Public Safety, maintains wrecker rotation lists within established towing zones to provide towing services to motorists.[1] The regulations provide that, unless the owner or driver of a wrecked or disabled vehicle requests a specific wrecker service to tow the vehicle, the Patrol contacts a wrecker service from the rotation list for the zone where towing is required.[2] Companies on the list are contacted in the order in which they appear.[3] To remain on the rotation list for a particular towing zone, a wrecker service must be either physically located

---

1. At the time of the lawsuit, the pertinent regulations were found at 25A S.C.Code Ann. Regs. 63–600 (1983). These regulations were repealed on March 27, 1998, and replaced by 23A S.C.Code Ann. Regs. 38–600 (Supp.2001). Citations in this opinion are to the regulation in effect at the time of the lawsuit.

2. 25A S.C.Code Ann. Regs. 63–600(2), (8), (9), (10), and (11).

3. *Id.* 63–600(11).

within the zone or maintain a separate business and storage lot within the zone.[4]

Marietta has been on various wrecker rotation lists since the Department adopted this practice. On November 8, 1995, the Patrol approved Marietta's request to be placed on the list for zone 5, where Marietta had an office and access to a storage facility. The office and storage facility were on the premises of Fender Mender, a business located at 205 North Pleasantburg Drive. Marietta had an oral agreement with Fender Mender allowing Marietta to store vehicles on Fender Mender's property in exchange for splitting the storage fees.

On February 8, 1996, the Patrol contacted Marietta to tow a vehicle belonging to Chris Busha. Busha had been involved in a single-car accident about one-half mile from Marietta's North Pleasantburg Drive location.

Robert Pritchett, Marietta's general manager, went to the scene to tow the vehicle to the North Pleasantburg Drive location. When Pritchett arrived at Fender Mender, however, he noticed the Marietta Garage sign was missing and the lock had been cut. Pritchett then towed the vehicle to Marietta's home office, which was approximately sixteen miles from the accident scene.

Subsequently, unbeknownst to Marietta, Jean Busha, Chris Busha's mother, complained to the Patrol about the towing charge for her son's vehicle. After receiving Jean Busha's complaint, Lt. Kimbrell of the Patrol drove to the North Pleasantburg Drive location and learned from the proprietors of Fender Mender that Fender Mender and Marietta had ceased doing business with each other. On February 16, 1996, Marietta was removed from the rotation list for zone 5 without a hearing and was notified in writing of the removal a few days later.

Marietta requested a hearing to contest its removal from the rotation list. The request was granted, and the hearing took place June 10, 1996. At the hearing, Marietta informed the Patrol that it had acquired a new location in zone 5. The Patrol inspected the new site and, on November 10, 1996, reinstated Marietta to the rotation list for zone 5. On Novem-

---

4. *Id.* 63–600(8).

ber 26, 1996, however, the Department informed Marietta in writing that it was upholding the earlier decision to remove Marietta from the list "for the simple reason that the location of 205 [North] Pleasantburg Drive is no longer occupied by Marietta Garage."

After receiving this notification from the Department, Marietta filed a complaint in the circuit court against the Department requesting damages allegedly resulting from gross negligence on the part of the Department and from the unconstitutional taking of Marietta's property rights.[5] Marietta determined it had missed about twenty rotation calls during the time it was off the rotation list for zone 5 up until the administrative hearing on June 10, 1996.

Both sides moved for summary judgment. On October 17, 1997, the circuit court issued an order denying summary judgment to Marietta and granting summary judgment to the Department.

Marietta appealed the grant of summary judgment to the Department. On September 17, 1999, this court, in a published opinion, affirmed the grant of summary judgment on Marietta's gross negligence claim, but further held the Department violated the South Carolina Administrative Procedures Act (APA) by failing to conduct a pre-removal hearing before removing Marietta from the rotation list for zone 5.[6] Because of the determination that "[t]he Department's failure to provide Marietta notice and a hearing prior to actual removal violated the APA," the case was remanded to the circuit court for further proceedings.[7]

On remand, the Department again moved for summary judgment. The circuit court granted the motion, holding (1) Marietta's claim for damages as a result of the Department's APA violation was moot, and (2) Marietta could not recover damages for inverse condemnation because it had failed to

---

5. Marietta initially sought an appeal of the administrative decision, but deleted this request in its amended complaint.

6. *Marietta Garage, Inc. v. South Carolina Dep't of Pub. Safety*, 337 S.C. 133, 522 S.E.2d 605 (Ct.App.1999).

7. *Id.* at 139, 522 S.E.2d at 608.

allege a compensable property interest. Again, Marietta appeals.

## LAW/ANALYSIS

1. Marietta first argues the circuit court erred in ruling that its claim for damages under the APA was moot. We disagree.

■ "A case becomes moot when judgment, if rendered, will have no practical legal effect upon [the] existing controversy. This is true when some event occurs making it impossible for [the] reviewing Court to grant effectual relief." [8]

■ In the present case, there is no meaningful relief that either this court or the trial court could now give Marietta. In this court's prior opinion, we held the Department had violated the APA by failing to hold a hearing before removing Marietta from the rotation list.[9] Notwithstanding the finding that a violation occurred, Marietta received a hearing and was eventually reinstated to the list. The only question remaining is whether Marietta is entitled to money damages for the APA violation as compensation for the time it was not on the list.

The APA allows a party to seek judicial review upon exhaustion of administrative remedies.[10] It does not, however, specifically provide for the assessment of civil penalties against an agency found to be in violation of its provisions. We have not found-nor has Marietta directed our attention to-any authority indicating that an aggrieved party may seek money damages under the APA or under any analogous legislation absent an express provision recognizing such a claim.[11]

---

**8.** *Mathis v. South Carolina State Highway Dep't*, 260 S.C. 344, 346, 195 S.E.2d 713, 715 (1973).

**9.** *Marietta Garage*, 337 S.C. at 139, 522 S.E.2d at 608.

**10.** S.C.Code Ann. § 1–23–380 (Supp.2001).

**11.** In support of its argument that the Department's APA violation warrants the imposition of money damages, Marietta cites *Stoddard v. Western Carolina Regional Sewer Authority*, 784 F.2d 1200 (4th Cir. 1986). *Stoddard*, however, concerned damages under the Federal Clean Water Act, and the Fourth Circuit Court of Appeals, in reversing

2. Marietta further contends the circuit court erred in granting summary judgment to the Department on Marietta's inverse condemnation claim, contending it was "deprived . . . of a protected property right without compensation." We hold summary judgment was proper.

To prove an inverse condemnation, a plaintiff must show: (1) an affirmative, positive, aggressive act on the part of the governmental agency; (2) a taking; (3) the taking is for a public use; and (4) the taking has some degree of permanence.[12] "The threshold inquiry is whether the property interest affected is inherent in the plaintiff's ownership rights or completely dependent upon regulatory licensing." [13]

In *Pritchett v. Alford,*[14] the Fourth Circuit Court of Appeals held that, once a wrecker service is placed on a wrecker rotation list, it acquires a constitutionally protected property right not to be removed from the list without Fourteenth Amendment procedural due process requirements.[15] Nonetheless, we hold that, even when the record is viewed in the light most favorable to Marietta, the inverse condemnation claim must fail because there is nothing to suggest that there was a taking for a public use.

Marietta argues only that the rotation list was "a list maintained for the public's benefit." Like the plaintiff in *Gasque v. Town of Conway,*[16] who unsuccessfully claimed damages resulting from the refusal of the municipal authori-

---

the district court's refusal to assess civil penalties, noted the Act specifically authorized the award of costs and attorney fees. *Id.* at 1209.

12. *Gray v. South Carolina Dep't of Highways and Pub. Transp.,* 311 S.C. 144, 427 S.E.2d 899 (Ct.App.1992).

13. *Rick's Amusement, Inc. v. State of South Carolina,* 351 S.C. 352, ——, 570 S.E.2d 155, 158 (2001), *cert. denied,* 535 U.S. 1053, 122 S.Ct. 1909, 152 L.Ed.2d 819 (2002).

14. 973 F.2d 307 (4th Cir.1992).

15. *Id.* at 317–18.

16. 194 S.C. 15, 8 S.E.2d 871 (1940), *overruled on other grounds by McCall v. Batson,* 285 S.C. 243, 329 S.E.2d 741 (1985).

ties to grant him a permit to build and operate a gasoline filling station within the town, Marietta cannot show, either "directly or indirectly," [17] that its place on the rotation list was "subjected to a public use" [18] during the time Marietta was removed from the list.[19] At best, it has demonstrated only that its removal benefitted other wrecker services on the rotation list.

3. Marietta also contends the circuit court inaccurately portrayed several allegations as undisputed facts in the case. The specific findings with which Marietta appears to take issue concern: (1) whether Department regulations require that a lot be inspected before it is placed on the wrecker rotation list; (2) whether the rules and regulations of the Department require notification for a change of address within a zone; (3) whether Marietta at all times had maintained a storage lot within zone 5; (4) whether a predeprivation hearing was feasible; (5) whether circumstances necessitated quick removal of Marietta by the Department from the rotation list; and (6) whether there was ample opportunity for the State to provide notice and an opportunity to be heard before suspending Marietta from the wrecker rotation list. We agree with the Department that these concerns, even if resolved in Marietta's favor, would not affect the result in this case insofar as our holdings are based on our analysis of the APA and our determination that there was no evidence that the alleged taking was for a public use.

**AFFIRMED.**

HOWARD and SHULER, JJ., concur.

17. *Id.* at 23, 8 S.E.2d at 874.

18. *Id.*

19. *See Edens v. City of Columbia,* 228 S.C. 563, 91 S.E.2d 280 (1956) (noting that a public use must be either a use by the public or by some quasi public agency, and not simply a use that incidentally or indirectly promotes the public interest or general prosperity).