# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Lucille H. Ray, Appellant,

v.

City of Rock Hill, South Carolina, a Municipal Corporation, and South Carolina Department of Transportation, an agency of the State of South Carolina, Defendants,

Of which City of Rock Hill is the Respondent.

Appellate Case No. 2016-002118

———————

Appeal From York County
D. Garrison Hill, Circuit Court Judge
S. Jackson Kimball, III, Special Circuit Court Judge

———————

Opinion No. 5684
Heard April 1, 2019 – Filed September 11, 2019

———————

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

———————

Richard B. Fennell, of James, McElroy & Diehl, P.A., of Charlotte, NC, and Charles S. Bradford, of Charles S. Bradford, P.A., of York, for Appellant.

W. Mark White and Jeremy D. Melville, both of Spencer & Spencer, P.A., of Rock Hill, for Respondent.

———————

**LOCKEMY, C.J.:**  In this action, Lucille Ray asserts the special circuit court judge erred in granting summary judgment to the City of Rock Hill (the City) as to her claims for inverse condemnation and injunctive relief.  In addition, Ray argues the circuit court erred in (1) excluding witness testimony regarding abatability, and (2) granting a directed verdict to the City as to her claim for trespass.  We affirm in part, reverse in part, and remand to the circuit court.

**FACTS**

Ray's claims against the City in this action relate to a 24-inch storm water pipe (the Pipe) located under her property at 330 College Avenue (the Property) in the City.  The Pipe begins at a City maintained catch basin on College Avenue in front of the Property and channels storm water underneath Ray's home and through the Property.  The Property and the Pipe are located at the topographical low point of a watershed comprising approximately 29 acres.

Ray's predecessors-in-title constructed a home on the Property in the 1920's.  The Pipe was installed on the Property prior to the construction of the home.  The record contains no evidence of who originally installed the Pipe, who owns the Pipe, or the existence of any easement for piping water across the Property.  The record reveals one of Ray's predecessors-in-title was aware of the Pipe and connected a drainage pipe into the Pipe.

Ray acquired the Property in May 1985 and acknowledges a history of sinkholes and cave-ins on the Property since the time of her acquisition.  In 1992, Ray observed as her gardener fell waist deep into a sinkhole behind her home.  Ray was also aware of bending and movement in the roof frame of the home in 1995 and again in 2007.  By 2008, Ray was aware of the existence of the Pipe and was concerned that water leaking from the Pipe might be damaging her home.  Ray noticed the front steps of her home appeared to be sinking and requested the City investigate the Pipe.  In 2008, City employees came to the Property at least twice and informed Ray that a storm water pipe "ran toward the steps" of Ray's house.

On November 6, 2012, Ray filed suit against the City and the South Carolina Department of Transportation (SCDOT).  In her complaint, Ray asserted causes of action for trespass and inverse condemnation; she also sought injunctive relief and attorney's fees.  Ray claimed her home incurred structural damage due to foundation movement as a result of water leaking from the Pipe.

On March 24, 2014, SCDOT filed a motion for summary judgment on each of Ray's claims. The circuit court granted the motion and all causes of action asserted against SCDOT were dismissed.

On May 19, 2014, the City filed a motion for summary judgment. Following a hearing, the special circuit court judge granted the City partial summary judgment, dismissing Ray's claims for inverse condemnation, injunctive relief, and attorney's fees. The judge further held the collection and discharge of water under Ray's home may be considered an affirmative, intentional act, thus leaving a genuine issue for trial as to Ray's trespass claim. The judge ruled the statute of limitations began to run on Ray's trespass claim no later than 2008. However, the judge found a genuine issue of fact existed as to whether the asserted trespass in this case was abatable. The judge noted that, pursuant to case law, where the offending conduct is abatable, the statute of limitations begins to run with each new invasion of a plaintiff's property. Therefore, since abatability is an issue of fact, the judge found Ray's remaining claim for trespass survived as to each new invasion for the three years prior to November 6, 2009. The City's and Ray's subsequent motions to reconsider were denied.

On September 12, 2016, the first day of trial, the City moved to exclude certain testimony, including opinions expected to be offered by Michael Leonard, a structural engineer and Ray's expert witness. In deposition testimony, Leonard opined that the structural damage to Ray's home was partially the result of the leaking Pipe. Leonard further testified that to render a qualified opinion on the abatability of the flow of water to and through the Pipe would require a thorough engineering study. Leonard testified he had not performed a hydrology study or studied the flow of water to or through the Pipe. Leonard testified he was unable to testify to a reasonable degree of engineering certainty that the flow of water could be reasonably routed around the Property.

The circuit court granted the City's motion, excluding Leonard's opinion testimony regarding the issue of the abatability of the alleged trespass. Thereafter, Ray acknowledged she could not meet her burden of proof in light of the court's ruling and stated "it would be appropriate to enter judgment against me." In a subsequent order, the circuit court held that given the special circuit court judge's prior ruling on summary judgment, only an abatable trespass remained as a viable cause of action. The court explained that because it had excluded Leonard's opinion testimony as unreliable concerning abatement, Ray's trespass cause of action was unviable. With no genuine issue of material fact remaining, the court found the City was entitled to judgment as a matter of law. This appeal followed.

**LAW/ANALYSIS**

**I. Summary Judgment**

Ray argues the special circuit court judge erred in granting summary judgment as to her claims for inverse condemnation and injunctive relief.

"An appellate court reviews a grant of summary judgment under the same standard applied by the [circuit] court pursuant to Rule 56, SCRCP." *Lanham v. Blue Cross & Blue Shield of S.C., Inc.*, 349 S.C. 356, 361, 563 S.E.2d 331, 333 (2002). Summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that . . . no genuine issue [exists] as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "In determining whether any triable issues of fact exist for summary judgment purposes, the evidence and all the inferences [that] can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. . . [who] is only required to submit a mere scintilla of evidence in order to withstand a motion for summary judgment." *Hancock v. Mid-S. Mgmt.*, 381 S.C. 326, 329-31, 673 S.E.2d 801, 802-03 (2009).

**A. Inverse Condemnation**

"An inverse condemnation occurs when a government agency commits a taking of private property without exercising its formal powers of eminent domain." *Hawkins v. City of Greenville*, 358 S.C. 280, 290, 594 S.E.2d 557, 562 (Ct. App. 2004). "To prove an inverse condemnation, a plaintiff must show: (1) an affirmative, positive, aggressive act on the part of the governmental agency; (2) a taking; (3) the taking is for a public use; and (4) the taking has some degree of permanence." *Marietta Garage, Inc. v. S.C. Dep't of Pub. Safety*, 352 S.C. 95, 101, 572 S.E.2d 306, 308 (Ct. App. 2002).

The special circuit court judge determined Ray's claim that the City collected water into its storm water drainage system and channeled it under her home did not support her claim of inverse condemnation. The judge found no positive, aggressive acts were committed by the City. The judge noted Ray did not allege the construction of any new improvements causing water to flow through the Pipe under her Property, and Ray failed to cite any case law which would categorize maintenance of the storm water drainage system as a positive, aggressive act.

Ray contends the City's maintenance in November 2012 of drainage pipes situated under College Avenue in front of her Property constituted an affirmative act sufficient to give rise to a claim for inverse condemnation. She maintains the City, after repairing several broken pipes under College Avenue, reconnected the subject Pipe to the City's storm water drainage system against her wishes.[1] Ray asserts the City undertook a permanent public project to modernize its infrastructure along College Avenue, and, as a result, it took positive steps to direct its storm water system flow directly under her home.

The City asserts there is no evidence it installed or owned the subject Pipe or that any new construction or improvements upstream from the Pipe resulted in an increase in the amount or flow rate of water toward Ray's Property. The City contends its maintenance of the pipes under College Avenue in November 2012 was not to the subject Pipe or to a pipe directly connected to the Pipe. The City argues summary judgment was proper because Ray was unable to produce any evidence to attribute the flow of water through the Pipe to any action by the City.

Although the City asserts its repair work in 2012 only involved one pipe and did not affect the subject Pipe, we believe questions of fact exist as to which pipes were damaged and in need of repair. On November 13, 2012, Ray's attorney advised the City that three large pipes in front of Ray's Property were damaged during the City's work on College Avenue and specifically advised the City that Ray did not consent to the reconnection of the Pipe to any of the replacement pipes. Ray submitted photographs of the damaged pipes in front of her home into evidence. These photos appear to show three large severed pipes and the City's subsequent work to reconnect the pipes and resume the flow of storm water.

This court addressed inverse condemnation and municipal drainage systems in *Hawkins v. City of Greenville*. Hawkins filed suit against the City of Greenville asserting a cause of action for inverse condemnation and alleging the City's neglect in designing and maintaining its stormwater drainage system led to flooding which damaged his property. *Hawkins*, 358 S.C. at 285-86, 594 S.E.2d at 560. This court found Hawkins failed to allege any affirmative, positive, and aggressive acts by the City which damaged his property. *Id.* at 291, 594 S.E.2d at 562. Specifically, the court found: (1) the acts Hawkins alleged were merely failures to act; and (2) the only affirmative act Hawkins cited as a basis for his inverse condemnation claim

---

[1] On November 13, 2012, Ray's attorney sent a letter to the City instructing them not to reconnect the City's storm water drainage system to the Pipe.

was the replacement of a culvert and the installation of material around a nearby creek. *Id.* at 291, 594 S.E.2d at 562-63. The court held there was no evidence in the record that either of these acts caused the flooding on Hawkins's property. *Id.* at 291, 594 S.E.2d at 563.

We note that while the dissent in the present case finds *Hawkins* controlling, we believe *Hawkins* is distinguishable from the present case. Here, we find a genuine issue of material fact exists as to whether the City engaged in an affirmative, positive, and aggressive act in reconnecting City pipes to the Pipe after the City admitted it did not have an easement and Ray told the City not to reconnect. Accordingly, we reverse the special circuit court judge's grant of summary judgment as to Ray's inverse condemnation claim.

## B. Injunctive Relief

"Actions for injunctive relief are equitable in nature." *Denman v. City of Columbia*, 387 S.C. 131, 140, 691 S.E.2d 465, 470 (2010). "In equitable actions, an appellate court may review the record and make findings of fact in accordance with its own view of the preponderance of the evidence." *Id.* "To obtain an injunction, a party must demonstrate irreparable harm, a likelihood of success on the merits, and the absence of an adequate remedy at law." *Id.* "An injunction is a drastic remedy issued by the court in its discretion to prevent irreparable harm suffered by the plaintiff." *Scratch Golf Co. v. Dunes W. Residential Golf Properties, Inc.*, 361 S.C. 117, 121, 603 S.E.2d 905, 907 (2004).

The special circuit court judge found Ray's claim for injunctive relief failed as a matter of law because her trespass claim provided an adequate remedy at law. The judge noted Ray "could be made whole by a damage award on the trespass claim."

Ray argues the City's trespass on the Property is continuing in nature as it recurs with each rainfall. She contends the judge's finding that a genuine issue of fact existed as to whether the trespass was abatable was inconsistent with its grant of summary judgment to the City as to her claim for injunctive relief. Ray asserts that repairing the damage caused by the flow of water through the Pipe beneath her home, while permitting the City to continue channeling water through the Pipe, guarantees further damage and litigation between the parties.

We agree with Ray that an injunction is the proper remedy for a continuing trespass. *See Mack v. Edens*, 306 S.C. 433, 437, 412 S.E.2d 431, 434 (Ct. App. 1991) ("Injunction is a proper remedy for a continuous trespass to land. Because

of the permanent and recurring nature of the injury, which cannot otherwise be prevented, the courts should enjoin the continuous trespasser to protect the landowner's property rights from hurt or destruction."). However, as discussed below, we believe the circuit court properly granted a directed verdict in favor of the City as to Ray's trespass claim. Therefore, our finding below is dispositive of Ray's argument that the special circuit court judge erred in granting summary judgment as to her claim for injunctive relief for trespass.

## II. Exclusion of Expert Testimony

Ray argues the circuit court erred in granting the City's motion to exclude Leonard's expert testimony. We disagree.

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Rule 702, SCRE.

"Qualification of an expert and the admission or exclusion of his testimony is a matter within the sound discretion of the [circuit] court." *Fields v. Reg'l Med. Ctr. Orangeburg*, 363 S.C. 19, 25, 609 S.E.2d 506, 509 (2005). "[T]he trial court's decision [to admit or exclude expert testimony] will not be disturbed on appeal absent an abuse of discretion." *Id.* "An abuse of discretion occurs when the ruling is based on an error of law or a factual conclusion that is without evidentiary support." *Id.* at 26, 609 S.E.2d at 509. "A trial court's ruling on the admissibility of an expert's testimony constitutes an abuse of discretion when the ruling is manifestly arbitrary, unreasonable, or unfair." *Id.* "To warrant reversal based on the admission or exclusion of evidence, the appellant must prove both the error of the ruling and the resulting prejudice, i.e., that there is a reasonable probability the jury's verdict was influenced by the challenged evidence or the lack thereof." *Id.*

"The trial court serves as the gatekeeper in the admission of all evidence presented at trial . . . ." *Watson v. Ford Motor Co.*, 389 S.C. 434, 456, 699 S.E.2d 169, 180 (2010). "In determining whether to admit expert testimony, the court must make three inquiries." *Graves v. CAS Med. Sys., Inc.*, 401 S.C. 63, 74, 735 S.E.2d 650, 655 (2012). "First, the [circuit] court must determine whether the subject matter is beyond the ordinary knowledge of the jury, thus requiring an expert to explain the matter to the jury." *Watson*, 389 S.C. at 446, 699 S.E.2d at 175. Second, the expert must have "acquired the requisite knowledge and skill to qualify as an expert in the particular subject matter," although he "need not be a specialist in the

particular branch of the field." *Id.* Finally, the substance of the testimony must be reliable. *Id.* It is this final requirement of reliability which is the central feature of the inquiry. *State v. White*, 382 S.C. 265, 270, 676 S.E.2d 684, 686 (2009).

In analyzing the reliability of proposed expert testimony the court must consider the following factors: "(1) the publications and peer review of the technique; (2) prior application of the method to the type of evidence involved in the case; (3) the quality control procedures used to ensure reliability; and (4) the consistency of the method with recognized scientific laws and procedures." *Graves*, 401 S.C. at 74, 735 S.E.2d at 655 (quoting *State v. Council*, 335 S.C. 1, 19, 515 S.E.2d 508, 517 (1999)).

The circuit court ruled Ray may be able to establish a claim for continuing trespass to the extent she could show intentional collection and discharge of water under her home causing damage within the three-year limitations period. The central issue in distinguishing a continuing trespass from a permanent trespass is whether abatement of the trespass is reasonably and practically possible. *Hedgepath v. Am. Tel. & Tel. Co.*, 348 S.C. 340, 357, 559 S.E.2d 327, 337 (Ct. App. 2001). Thus, a material issue of fact with respect to Ray's claim for continuing trespass is whether the alleged trespass is abatable.

Prior to trial, the City moved to exclude Leonard's expert testimony on the grounds that it was unreliable. The circuit court granted the motion with respect to the issue of whether the City's alleged trespass was abatable because Leonard "had not done any engineering work on this issue, and it would not meet [the] criteria of being reliable or assist[ing] the jury." As the court noted in its subsequent order, given the prior ruling on summary judgment, only an abatable trespass remained as a viable cause of action. The court explained that because it had excluded Leonard's opinion testimony as unreliable concerning abatement, Ray's trespass cause of action was unviable.

We find the trial court did not abuse its discretion in granting the City's motion to exclude Leonard's testimony. Leonard testified that to render a qualified opinion on the abatability of the flow of water to and through the Pipe would require a thorough engineering study. Leonard testified he had not performed a hydrology study or studied the flow of water to or through the Pipe. Leonard testified he had not analyzed whether an alternative drainage line could be placed in any particular location to divert water flow; he had not analyzed whether any alternatives would conflict with other existing infrastructure; he had not analyzed the topography of the watershed area to know if and how an alternative line could reroute the water

flow; and he had not studied or analyzed the feasibility or cost of any alternatives to routing water flow. Leonard admitted that all of these factors would have to be studied to properly render an opinion as to the issue of whether the flow of water through the Pipe is reasonably and practically abatable. Finally, Leonard testified that although he believed the water flow could be rerouted around the Property, he was unable to testify to such with a reasonable degree of engineering certainty. As gatekeeper for expert testimony, the trial court properly excluded Leonard's opinions regarding abatability.

## III.    Directed Verdict

Ray argues the circuit court erred in granting a directed verdict on her trespass claim. We disagree.

When reviewing the circuit court's ruling on a directed verdict motion, this court must apply the same standard as the circuit court "by viewing the evidence and all reasonable inferences in the light most favorable to the nonmoving party." *Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 27-28, 602 S.E.2d 772, 782 (2004). An appellate court will reverse the circuit court's ruling on a directed verdict motion only when there is no evidence to support the ruling or when the ruling is controlled by an error of law. *Law v. S.C. Dep't of Corr.*, 368 S.C. 424, 434-35, 629 S.E.2d 642, 648 (2006). "When the evidence yields only one inference, a directed verdict in favor of the moving party is proper." *Wright v. Craft*, 372 S.C. 1, 22, 640 S.E.2d 486, 498 (Ct. App. 2006). "On the other hand, the [circuit] court must deny a motion for a directed verdict when the evidence yields more than one inference or its inference is in doubt." *Id.* "When considering a directed verdict motion, neither the [circuit] court nor the appellate court has authority to decide credibility issues or to resolve conflicts in the testimony or evidence." *Burnett v. Family Kingdom, Inc.*, 387 S.C. 183, 188-89, 691 S.E.2d 170, 173 (Ct. App. 2010).

After granting the City's motion to exclude Leonard's expert testimony, Ray conceded a directed verdict was proper in light of the circuit court's exclusion of Leonard's testimony on the issue of abatability. With no genuine issue of material fact remaining, the court found the City was entitled to judgment as a matter of law. We find the court did not err in granting a directed verdict. Ray did not offer any evidence on the issue of abatability other than the proposed testimony of Leonard. After the court excluded Leonard's testimony, there was no issue of material fact regarding the critical element of continuing trespass. Thus, a directed verdict in favor of the City was proper.

## CONCLUSION

We reverse the special circuit court judge's grant of summary judgment as to Ray's inverse condemnation claim. Additionally, we affirm the circuit court's exclusion of witness testimony regarding abatability and its grant of a directed verdict to the City as to Ray's claim for trespass.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**MCDONALD, J., concurs.**

**SHORT, J., concurring in part and dissenting in part:** Respectfully, I concur in part and dissent in part. I agree with the majority to affirm the exclusion of expert testimony, the directed verdict on the trespass claim, and the injunctive relief. However, I would also affirm the trial court's grant of summary judgment on the inverse condemnation claim. "To establish an inverse condemnation, a plaintiff must show: '(1) an affirmative, positive, aggressive act on the part of the governmental agency; (2) a taking; (3) the taking is for a public use; and (4) the taking has some degree of permanence.'" *Hawkins v. City of Greenville*, 358 S.C. 280, 290, 594 S.E.2d 557, 562 (Ct. App. 2004) (quoting *Marietta Garage, Inc. v. S.C. Dep't of Pub. Safety*, 352 S.C. 95, 101, 572 S.E.2d 306, 308 (Ct. App. 2002)). I agree with the circuit court that Ray has failed to allege an affirmative, positive, aggressive act on the City's part and *Hawkins* is controlling. The evidence shows the pipes in the middle of College Avenue were broken during a City project, and the City repaired the pipes. I conclude this was maintenance to an existing system of pipes and not the basis for a claim for inverse condemnation. Thus, I would affirm.