594 S.E.2d 557

**Louie D. HAWKINS, individually and d/b/a Servicemaster of Greenville, Servicemaster of Greenville, LLC, and Dixie P. Hawkins, Appellants,**

v.

**CITY OF GREENVILLE, Respondent.**

**No. 3764.**

Court of Appeals of South Carolina.

Submitted Feb. 11, 2004.

Decided March 22, 2004.

review remaining issues when its determination of a prior issue is dispositive of the appeal).

Robert C. Childs, III, of Greenville, for Appellants.

W. Howard Boyd, Jr., Luanne L. Runge and Fred W. Suggs, III, all of Greenville, for Respondent.

ANDERSON, J.:

Louie D. Hawkins brought this action, claiming the city of Greenville ("City") improperly and negligently designed and maintained its municipal drainage system in the area where his business was located. He alleged the City's malfeasance caused his property to flood after a rainstorm in 1997. The trial court granted summary judgment in favor of the City on all of Hawkins' claims. We affirm.[1]

## FACTS/PROCEDURAL BACKGROUND

On July 24, 1997, Hawkins' business, Servicemaster of Greenville, was flooded during a heavy rainfall, causing substantial damage to the business and surrounding property. Hawkins blamed the City for the damage, arguing the flooding

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

was caused by the City's neglect in designing and maintaining its stormwater drainage system. Accordingly, he brought the present action asserting various causes of action stemming from the City's alleged acts and failures to act.

## I. The Servicemaster Property and Surrounding Drainage System

The Servicemaster property is located in a low-lying area on the east side of Greenville. This part of Greenville has been heavily developed with retail businesses and other large commercial developments.

The immediate area surrounding the Servicemaster property forms a 3.24–square–mile stormwater basin. Rainwater falling into the basin drains downhill into nearby Laurel Creek. Over the years, the City and private developers made several improvements to the drainage system in the basin. When Hawkins moved Servicemaster to its Haywood Road location, drainage around the property was handled primarily by two ninety-six-inch pipes installed in Laurel Creek to expand the creek's ability to effectively handle runoff in the area. After a severe storm in 1991 caused flooding in the area, the City installed an additional large, elliptical arched pipe in Laurel Creek to further increase the creek's stormwater capacity. In early July 1997, the City installed "riprap" along the banks of the creek to stem erosion that had occurred.[2]

## II. The 1991 Flood, Lawsuit and Settlement

A heavy rainstorm in July 1991 caused the Servicemaster property and surrounding area to flood. The Servicemaster property suffered substantial damage when the excess runoff flooded into the building, bringing mud and other debris. As in the present case, Hawkins brought suit against the City, claiming its actions caused the flooding. Hawkins specifically alleged the City was negligent "in failing to design" and "maintain a reasonably adequate surface water drainage system" and "in failing to properly supervise the surface water

---

2. "Riprap" is an industry term for piles of loose stone or angular boulders built seaward of the shoreline to prevent erosion by waves or currents.

drainage system to ensure adequate flow of water during periods of inc[l]ement weather."

The case was settled in 1994. The City paid Hawkins $4,000 in exchange for a "full, complete and final release of all damages arising out of the design, construction, maintenance, and operation of the water drainage system on or adjacent to Bryland [sic] Drive." This release was executed in March 1994. It provides:

> [Servicemaster] does hereby release, relieve and forever acquit the City of Greenville, South Carolina, a municipal corporation, their agents, employees, officers, successors, and assigns from any and all liability arising out of or in any way connected with the water and mud damage to [Hawkins'] place of business located at 1 Byrdland Drive which occurred on or about July 30, 1991 and it is the intention in executing this Release to forever discharge the City of Greenville from any and all claims, demands, actions or causes of action which may exist, known or unknown, of any and all damages, past, present and future, in any way connected with or arising out of the aforesaid damages.
>
> . . . .
>
> It is acknowledged and understood that this is a full, complete and final release of all damages arising out of the design, construction, maintenance, and operation of the water drainage system on or adjacent to Bryland [sic] Drive, that no future or further payments will be paid as a result thereof and that the persons and corporations in whose favor this Release runs are herewith fully finally and forever discharged from any and all liability with respect to the aforementioned property.

### III. The 1997 Flood and the Present Action

On July 24, 1997, a record amount of rain fell in and around Greenville in a short period of time.[3] Stormwater draining into Laurel Creek overwhelmed the creek's capacity, causing water to flood onto the Servicemaster property and several nearby businesses.

---

3. Testimony was offered at the summary judgment hearing that the National Climatic Data Center recorded that 2.51 inches fell in Greenville during a one-hour period on July 24, 1997.

In July 1999, Hawkins brought the present action against the City, alleging causes of action for: (1) inverse condemnation, (2) negligence in the City's design and maintenance of its stormwater drainage system, (3) violation of South Carolina Code section 5–31–450, (4) trespass, (5) conversion, and (6) nuisance. Finding no genuine issue of material fact with respect to any of these claims, the trial court granted the City's motion for summary judgment.

## STANDARD OF REVIEW

A trial court should grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP; *accord Trivelas v. South Carolina Dep't of Transp.*, 348 S.C. 125, 130, 558 S.E.2d 271, 273 (Ct.App.2001); *Wells v. City of Lynchburg*, 331 S.C. 296, 301, 501 S.E.2d 746, 749 (Ct.App.1998); *see also Tupper v. Dorchester County*, 326 S.C. 318, 325, 487 S.E.2d 187, 191 (1997) ("Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.").

"The party seeking summary judgment has the burden of clearly establishing the absence of a genuine issue of material fact." *McNair v. Rainsford*, 330 S.C. 332, 342, 499 S.E.2d 488, 493 (Ct.App.1998) (citing *Baughman v. Am. Tel. & Tel. Co.*, 306 S.C. 101, 410 S.E.2d 537 (1991); *Standard Fire Ins. Co. v. Marine Contracting & Towing Co.*, 301 S.C. 418, 392 S.E.2d 460 (1990)). "In determining whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn therefrom must be viewed in the light most favorable to the nonmoving party." *Lanham v. Blue Cross & Blue Shield of South Carolina, Inc.*, 349 S.C. 356, 361–62, 563 S.E.2d 331, 333 (2002) (citing *Summer v. Carpenter*, 328 S.C. 36, 492 S.E.2d 55 (1997)); *accord Strother v. Lexington County Recreation Comm'n*, 332 S.C. 54, 61, 504 S.E.2d 117, 121 (1998). "Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law." *Lanham*, 349 S.C. at

362, 563 S.E.2d at 333 (citing *Brockbank v. Best Capital Corp.*, 341 S.C. 372, 534 S.E.2d 688 (2000)).

"All ambiguities, conclusions, and inferences arising from the evidence must be construed most strongly against the moving party." *Hall v. Fedor,* 349 S.C. 169, 173, 561 S.E.2d 654, 656 (Ct.App.2002) (citing *Young v. South Carolina Dep't of Corr.,* 333 S.C. 714, 511 S.E.2d 413 (Ct.App.1999)). "Even when there is no dispute as to evidentiary facts, but only as to the conclusions or inferences to be drawn from them, summary judgment should be denied." *Id.* at 173–74, 561 S.E.2d at 656. "Because it is a drastic remedy, summary judgment should be cautiously invoked so no person will be improperly deprived of a trial of the disputed factual issues." *Murray v. Holnam, Inc.,* 344 S.C. 129, 138, 542 S.E.2d 743, 747 (Ct.App. 2001) (citing *Carolina Alliance for Fair Employment v. South Carolina Dep't of Labor, Licensing & Regulation,* 337 S.C. 476, 523 S.E.2d 795 (1999)).

In reviewing the grant of a summary judgment motion, this court applies the same standard which governs the trial court: Summary judgment is proper when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP; *accord Baughman,* 306 S.C. at 114–15, 410 S.E.2d at 545; *Murray,* 344 S.C. at 138, 542 S.E.2d at 747 (citing *Brockbank,* 341 S.C. 372, 534 S.E.2d 688; *Wells,* 331 S.C. at 301, 501 S.E.2d at 749).

### *LAW/ANALYSIS*

Hawkins contends genuine issues of fact exist for each of his claims that should have compelled the trial court to deny the City's motion for summary judgment. We disagree.

### I. Inverse Condemnation

Hawkins first argues the trial court erred in granting summary judgment to the City on his inverse condemnation claim, contending he was deprived of his full rights to the Servicemaster property without just compensation as a result of the City's design and maintenance of the drainage system. We disagree.

■■■ An action for inverse condemnation is appropriate where the government takes private property for public use. *Quality Towing Inc. v. City of Myrtle Beach*, 340 S.C. 29, 38, 530 S.E.2d 369, 373 (2000). Inverse condemnation is a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency. *Horry County v. Ins. Reserve Fund*, 344 S.C. 493, 498, 544 S.E.2d 637, 640 (Ct.App.2001). While the typical taking occurs when the government acts to condemn property in the exercise of its power of eminent domain, the entire doctrine of inverse condemnation is predicated on the proposition that a taking may occur without such formal proceedings. *Horry County*, 344 S.C. at 498, 544 S.E.2d at 640. "The term 'inverse condemnation' describes an action grounded, not on statutory condemnation power, but on the constitutional proscription against the taking or damaging of property for public use without just compensation." *Vick v. South Carolina Dep't of Transp.*, 347 S.C. 470, 480, 556 S.E.2d 693, 698 (Ct.App. 2001). "One basic difference between condemnation and inverse condemnation is that in condemnation proceedings, the governmental entity is the moving party, whereas, in inverse condemnation, the property owner is the moving party." *South Carolina State Highway Dep't v. Moody*, 267 S.C. 130, 136, 226 S.E.2d 423, 425 (1976) (quoting 27 Am. Jur. 2d *Eminent Domain* § 829 (1996)). The action is not based on tort, but on the constitutional prohibition of the taking of property without compensation. *Horry County*, 344 S.C. at 498, 544 S.E.2d at 640.

■■ An inverse condemnation occurs when a government agency commits a taking of private property without exercising its formal powers of eminent domain. To establish an inverse condemnation, a plaintiff must show: "(1) an affirmative, positive, aggressive act on the part of the governmental agency; (2) a taking; (3) the taking is for a public use; and (4) the taking has some degree of permanence." *Marietta Garage, Inc. v. South Carolina Dep't of Pub. Safety*, 352 S.C. 95, 101, 572 S.E.2d 306, 308 (Ct.App.2002); *Gray v. South Carolina Dep't of Highways & Pub. Transp.*, 311 S.C. 144, 149, 427 S.E.2d 899, 902 (Ct.App.1992).

In the present case, Hawkins has failed to allege any affirmative acts by the City which damaged the Servicemaster property or otherwise diminished his rights in the property. Most of the City's "acts" he avers support his inverse condemnation claim are merely failures to act. Specifically, Hawkins asserts the City improperly allowed the development of neighboring parcels of commercial property which altered the elevation of the area and added strain to the Laurel Creek drainage pipes beyond their capacity and then failed to replace these pipes. The South Carolina cases addressing inverse condemnation are uniform in requiring that the claim be proved by "affirmative, positive, aggressive" acts by the governmental agency. Allegations of mere failure to act are insufficient. *See, e.g., Berry's On Main, Inc. v. City of Columbia,* 277 S.C. 14, 16, 281 S.E.2d 796, 797 (1981) (holding that proof of inverse condemnation requires that "there must be an affirmative, positive, aggressive act on the part of the governmental agency"); *Gray v. South Carolina Dep't of Highways & Pub. Transp.,* 311 S.C. 144, 149, 427 S.E.2d 899, 902 (Ct.App.1993) (listing as an element of inverse condemnation the requirement that there be "an affirmative, positive, aggressive act on the part of the governmental agency").

The only affirmative acts Hawkins cites as forming the basis of his inverse condemnation claim are the replacement of the double-box culvert with the large arched pipe in Laurel Creek in 1994 and the installation of the riprap material along the banks of the creek in 1997. The record contains no evidence that either of these acts caused the flooding of the Servicemaster property in 1997. Hawkins' own expert testified that the installation of the large arched pipe likely improved the drainage situation in the stormwater basin. Regarding the effect of the riprap material on drainage in the Laurel Creek basin, experts for both the City and Hawkins either offered no opinion on the impact of the riprap or opined that it was impossible to determine whether installing the riprap negatively or positively affected drainage.

Based on the lack of any evidence showing an affirmative, positive, aggressive act on the part of the City which would tend to prove the City's actions caused or precipitated the flooding of the Servicemaster property, we are compelled to

affirm the trial court's grant of summary judgment on Hawkins' inverse condemnation claim.

## II. Negligence

Hawkins argues the trial court erred in finding his negligence claim against the City was barred under the South Carolina Tort Claims Act. S.C.Code Ann. §§ 15–78–10 to 15–78–200 (Supp.2003). We disagree.

The Tort Claims Act governs all tort claims against governmental entities. *Flateau v. Harrelson,* 355 S.C. 197, 203, 584 S.E.2d 413, 416 (Ct.App.2003). It is the exclusive civil remedy available for any tort committed by a governmental entity or its employees or agents. S.C.Code Ann § 15–78–70(b) (Supp.2003); *Olson v. Faculty House of Carolina, Inc.,* 344 S.C. 194, 215, 544 S.E.2d 38, 49 (Ct.App.2001); *Wells v. City of Lynchburg,* 331 S.C. 296, 302, 501 S.E.2d 746, 749 (Ct.App.1998). The Tort Claims Act provides that the State, its agencies, political subdivisions, and other governmental entities are "liable for their torts in the same manner and to the same extent as a private individual under like circumstances," subject to certain limitations and exemptions provided in the Act. S.C.Code Ann. § 15–78–40 (Supp.2003). "Governmental entity" is defined by the act as "the State and its political subdivisions." S.C.Code Ann. § 15–78–30(d) (Supp.2002); *Flateau,* 355 S.C. at 204, 584 S.E.2d at 416. The provisions of the Act establishing limitations on and exemptions to the liability of the State, its political subdivisions, and employees, while acting within the scope of official duty, must be liberally construed in favor of limiting liability of the State. S.C.Code Ann § 15–78–20(f) (Supp.2003); *Steinke v. South Carolina Dep't of Labor, Licensing & Reg.,* 336 S.C. 373, 396, 520 S.E.2d 142, 154 (1999); *Arthurs v. Aiken County,* 338 S.C. 253, 270, 525 S.E.2d 542, 551 (Ct.App.1999); *Staubes v. City of Folly Beach,* 331 S.C. 192, 205, 500 S.E.2d 160, 167 (Ct.App. 1998). The governmental entity asserting the Act as an affirmative defense bears the burden of establishing a limitation upon liability or an exception to the waiver of immunity. *Strange v. South Carolina Dep't of Highways & Pub. Transp.,* 314 S.C. 427, 430, 445 S.E.2d 439, 440 (1994); *Steinke,* 336 S.C. at 393, 520 S.E.2d at 152; *Arthurs,* 338 S.C. at 270, 525 S.E.2d at 551. The Act does not create a new substantive cause of

action against a governmental entity. *Moore v. Florence Sch. Dist. No. 1,* 314 S.C. 335, 339, 444 S.E.2d 498, 500 (1994); *Bayle v. South Carolina Dep't of Transp.,* 344 S.C. 115, 121, 542 S.E.2d 736, 739 (Ct.App.2001). The Plaintiff must present evidence of the governmental entity's duty to act in order to recover under the Act. *Arthurs,* 338 S.C. at 270, 525 S.E.2d at 551. The Tort Claims Act expressly preserves all existing common law immunities. *Williams v. Condon,* 347 S.C. 227, 246, 553 S.E.2d 496, 507 (Ct.App.2001). The Tort Claims Act is a limited waiver of governmental immunity. *Arthurs,* 338 S.C. at 270, 525 S.E.2d at 551. Section 15–78–60 sets out thirty-seven "exceptions" to this waiver of sovereign immunity. These exceptions significantly limit the tort liability of government entities.

Several of these exceptions bear directly upon the alleged acts and failures to act by the City with respect to the municipal drainage system. Specifically, under section 15–78–60, the City is not liable for a loss resulting from: (1) "legislative, judicial, or quasi-judicial action or inaction"; (2) "administrative action or inaction of a legislative, judicial, or quasi-judicial nature"; (3) "adoption, enforcement, or compliance with any law or failure to adopt or enforce any law, whether valid or invalid, including, but not limited to, any charter, provision, ordinance, resolution, rule, regulation, or written policies"; (4) "the exercise of discretion or judgment by the governmental entity or employee or the performance or failure to perform any act or service which is in the discretion or judgment of the governmental entity or employee"; or (5) "regulatory inspection powers or functions, including failure to make an inspection, or making an inadequate or negligent inspection, of any property to determine whether the property complies with or violates any law, regulation, code, or ordinance or contains a hazard to health or safety." S.C.Code Ann. § 15–78–60(1), (2), (4), (5), and (13) (Supp.2003).

For each of these specific provisions, the determination of immunity from tort liability turns on the question of whether the acts in question were discretionary rather than ministerial. A finding of immunity under the Act "is contingent on proof the government entity, faced with alternatives, actually weighed competing considerations and made a conscious choice using accepted professional standards." *Wooten*

*ex rel. Wooten v. South Carolina Dep't of Transp.,* 333 S.C. 464, 468, 511 S.E.2d 355, 357 (1999). "The governmental entity bears the burden of establishing discretionary immunity as an affirmative defense." *Sabb v. South Carolina State Univ.,* 350 S.C. 416, 428, 567 S.E.2d 231, 237 (2002).

Although our courts have not applied the Tort Claims Act to facts similar to those of the present case, the Supreme Court of Texas has held that municipalities are not liable for the design and planning of their sewage and drainage systems because these acts are considered quasi-judicial, discretionary functions for which a government entity is not liable. *City of Tyler v. Likes,* 962 S.W.2d 489, 501 (Tex.1997). The court in *City of Tyler* opined:

> The duties of the municipal authorities in adopting a general plan of drainage, and determining when and where sewers shall be built, of what size and at what level, are of a quasi judicial nature, involving the exercise of deliberate judgment and large discretion, and depending upon considerations affecting the public health and general convenience throughout an extensive territory; and the exercise of such judgment and discretion in the selection and adoption of a general plan or system of drainage is not subject to revision by a court or jury in a private action for not sufficiently draining a particular lot of land.

*Id.* We find a comparable degree of discretion was granted to the City in the present case to exercise the measured policy judgments required to build and maintain an adequate municipal sewer and drainage system in Greenville. Accordingly, the City is immune from liability for negligence claims arising out of the design and maintenance of the drainage system in the Laurel Creek Basin.

### III. Liability Under South Carolina Code Section 5–31–450

 Hawkins next appeals the trial court's grant of summary judgment as to his claim under South Carolina Code section 5–31–450. We find no error with the trial court's ruling.

Section 5–31–450 mandates:

Whenever, within the boundaries of any municipality, it shall be necessary or desirable to carry off the surface water from any street, alley or other public thoroughfare along such thoroughfare rather than over private lands adjacent to or adjoining such thoroughfare, such municipality shall, upon demand from the owner of such private lands, provide sufficient drainage for such water through open or covered drains, except when the formation of the street renders it impracticable, along or under such streets, alleys or other thoroughfare in such manner as to prevent the passage of such water over such private lands or property. But if such drains cannot be had along or under such streets, alleys or other thoroughfare, the municipal authorities may obtain, under proper proceedings for condemnation on payment of damages to the landowner, a right of way through the lands of such landowner for the necessary drains for such drainage. If any municipal corporation in this State shall fail or refuse to carry out the provisions of this section, any person injured thereby may have and maintain an action against such municipality for the actual damages sustained by such person.

Applying this statute, our courts have held that liability does not obtain under section 5–31–450 absent some affirmative act by the municipality which alters the course or increases the amount of stormwater runoff onto private property. *See Brown v. Sch. Dist. of Greenville County*, 251 S.C. 220, 225, 161 S.E.2d 815, 817 (1968) (holding that unless the landowner pleads and proves an overt act against the municipality proximately causing the damages complained of, there is no cause of action under the statute). "The statute does not purport to make the municipality an insurer of the landowner against damage from surface water; it is only for such damage as results from the municipality's works that he may recover. By the same token, a municipality may not absolve itself from liability by diverting the surface water from its streets into a natural watercourse too small to carry it off." *Hall v. City of Greenville*, 227 S.C. 375, 386, 88 S.E.2d 246, 251 (1955). "The statute does not make the municipality an insurer of the landowner against damage from surface water; it is only for such damage as results from the municipality's works that he may recover. Therefore, unless the landowner

pleads and proves an overt act against the municipality proximately causing the damages complained of, there is no cause of action under the statute." *Taleff v. City of Greer*, 284 S.C. 510, 512, 327 S.E.2d 363, 364 (Ct.App.1985) (citations omitted). "Under this statute proof of negligence, in the usual sense of the word, in the design or construction of the drainage facilities installed by a municipality for the purpose of carrying off surface water along a street or other public thoroughfare is not an essential ingredient of the cause of action in favor of an adjacent landowner whose property has been damaged by surface water cast upon it as the result of such construction." *Hall*, 227 S.C. at 386, 88 S.E.2d at 251. This section apodictically contemplates positive action by a municipality to render it liable for damages. *Brown*, 251 S.C. at 225, 161 S.E.2d at 817.

Hawkins failed to offer proof of any affirmative, positive acts which would tend to show the actions of the City caused the flooding of the Servicemaster property. We approve the trial court's finding that Hawkins' claim under section 5–31–450 fails.

## IV. Trespass

■■■ Hawkins appeals the trial court's grant of summary judgment as to his claim for trespass against real property. We find no error with the trial court's ruling.

■■■ "[T]respass is any intentional invasion of the plaintiff's interest in the exclusive possession of his property. . . ." *Hedgepath v. Am. Tel. Tel. Co.*, 348 S.C. 340, 356, 559 S.E.2d 327, 337 (Ct.App.2001) (quoting *Silvester v. Spring Valley Country Club*, 344 S.C. 280, 286, 543 S.E.2d 563, 566 (Ct.App. 2001), *cert. denied* (citing *Ravan v. Greenville County*, 315 S.C. 447, 434 S.E.2d 296 (Ct.App.1993))). "To constitute actionable trespass, however, there must be an affirmative act, invasion of land must be intentional, and harm caused must be the direct result of that invasion." *Snow v. City of Columbia*, 305 S.C. 544, 553, 409 S.E.2d 797, 802 (Ct.App.1991); *accord Mack v. Edens*, 320 S.C. 236, 240, 464 S.E.2d 124, 127 (Ct.App. 1995). The gist of trespass is the injury to possession, and generally either actual or constructive possession is sufficient to maintain an action for trespass. *Macedonia Baptist*

*Church v. City of Columbia,* 195 S.C. 59, 71, 10 S.E.2d 350, 355 (1940).

■ For a trespass action to lie, "the act must be affirmative, the invasion of the land must be intentional, and the harm caused by the invasion of the land must be the direct result of that invasion." *Mack v. Edens,* 320 S.C. 236, 240, 464 S.E.2d 124, 127 (Ct.App.1995). Hawkins argues the same acts that he claims warrant a finding of inverse condemnation also compel a finding of civil trespass. Hawkins did not offer proof that any action by the City caused the flooding of the Servicemaster property.

Having failed to show any affirmative and intentional act necessary to sustain an action for trespass, we hold the trial court properly granted summary judgment.

## V. Conversion

■ Hawkins next argues the trial court erred in granting summary judgment on his claim for conversion. We disagree.

■ "Conversion is the unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of the condition or the exclusion of the owner's rights." *Crane v. Citicorp Nat'l Servs., Inc.,* 313 S.C. 70, 73, 437 S.E.2d 50, 52 (1993). "Conversion may arise by some illegal use or misuse, or by illegal detention of another's personal property." *Regions Bank v. Schmauch,* 354 S.C. 648, 667, 582 S.E.2d 432, 442 (Ct.App.2003). Conversion is a wrongful act which emanates by either a wrongful taking or wrongful detention. *Id.* It is well settled that a conversion action does not lie when alleging the exercise of dominion or control over real property. *See* 18 Am. Jur. 2d *Conversion* § 7 (1998) (commenting that "an action for conversion ordinarily lies only for personal property which is tangible, or at least represented by or connected with something tangible" and "will not lie for such indefinite, intangible, and incorporeal species of property as a . . . leasehold estate or interest"). Therefore, to the extent Hawkins' conversion claim pertains to the actions of the City with respect to real property, the claim clearly fails as a matter of law. Additionally, Hawkins provided no evidence that the City seized, disposed, denied use, or wrongfully took control of

298

any goods or personal chattels belonging to him or his business.

We affirm the trial court's decision to grant summary judgment on Hawkins' conversion claim.

## CONCLUSION

Finding no genuine issue of material fact with respect to any of Hawkins' causes of action, we conclude summary judgment in favor of the City was proper. The judgment of the trial court is therefore

**AFFIRMED.**

HEARN, C.J. and BEATTY, J., concur.