# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Lucille H. Ray, Respondent,

v.

City of Rock Hill, South Carolina, a Municipal Corporation, and South Carolina Department of Transportation, an agency of the State of South Carolina, Defendants,

Of which City of Rock Hill is the Petitioner.

Appellate Case No. 2019-002074

―――――――

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

―――――――

Appeal from York County
D. Garrison Hill, Circuit Court Judge
S. Jackson Kimball III, Special Circuit Court Judge

―――――――

Opinion No. 28045
Heard January 12, 2021 – Filed August 4, 2021

―――――――

## AFFIRMED AS MODIFIED

―――――――

W. Mark White and Jeremy D. Melville, of Spencer & Spencer, P.A., of Rock Hill, for Petitioner.

Richard B. Fennell, of James McElroy & Diehl, P.A., of Charlotte, NC, and Charles S. Bradford, of Bradford Espinoza, P.A., of York, for Respondent.

**JUSTICE JAMES:** Lucille Ray sued the City of Rock Hill (the City) for inverse condemnation, claiming her property was taken as a result of stormwater flowing through pipes under City streets and into a terra cotta pipe that runs underneath and behind her property. The circuit court granted summary judgment to the City, and the court of appeals reversed, holding a genuine issue of material fact exists as to whether the City engaged in an affirmative, positive, aggressive act sufficient to support Ray's claim. *Ray v. City of Rock Hill*, 428 S.C. 358, 834 S.E.2d 464 (Ct. App. 2019). We affirm the court of appeals as modified.

## Background

Ray purchased a house and lot on College Avenue (the Property) in Rock Hill in 1985. The house was built by one of Ray's predecessors-in-title in the 1920s. Before the house was built, someone—there is no evidence in the record as to who—installed a 24-inch underground terra cotta pipe (the Pipe) under the Property.

The Property and the Pipe are located at the topographical low point of a 29-acre watershed. Three stormwater pipes installed and owned by the City collect stormwater and transport it under various streets in the neighborhood. Stormwater runs through the pipes to a catch basin situate under College Avenue directly in front of the Property. The Pipe is in turn connected to the catch basin, and when water reaches the catch basin, it is channeled through the Pipe, under Ray's house, and to the back of the Property. The Pipe has been channeling stormwater in this fashion for roughly 100 years. The record contains no evidence of an easement for piping water under the Property.

Ray acknowledges a history of sinking and settling on the Property. In 1992, Ray saw her gardener fall waist-deep into a sinkhole ten to twelve feet from the back of her home. Ray was aware of bending and movement in the roof frame of her home in 1995 and again in 2007. Ray hired a contractor to fix the damage to her home on both occasions. In 2008—and this is critical to our discussion of the City's statute of limitations defense—Ray noticed the steps on the front porch of her home were sinking. That year, Ray contacted the City, and City employees told her of the Pipe running underground from College Avenue toward those steps.

On November 6, 2012, Ray commenced this action against the City alleging causes of action for inverse condemnation and trespass; she also sought injunctive

relief and attorney's fees.[1] Ray alleged foundational shifting of her home was caused by water running through the century-old Pipe, which she claimed was deteriorating. Sometime around the date Ray filed her lawsuit, the City began maintenance work on a sewer line beneath College Avenue (the Sewer Project). The sewer line was underneath the three City stormwater pipes that run into the catch basin in front of the Property. To get to the sewer line, the City had to dig up part of College Avenue in front of the Property and had to sever the three City stormwater pipes from the catch basin. This temporarily stopped the flow of water into the catch basin and through the Pipe. The Sewer Project was completely unrelated to the transport of water through the stormwater pipes to the catch basin. The City did not disturb the Pipe or the catch basin during the Sewer Project, and the Pipe remained connected to the catch basin.

On November 13, 2012, shortly after the City severed its three City pipes from the catch basin and one week after this suit was filed, Ray's attorney sent a letter to the City demanding that it not reconnect the three stormwater pipes to the catch basin, as that would resume the flow of water into the catch basin and through the Pipe. Shortly thereafter, the City reconnected the three stormwater pipes, resuming the flow of water into the catch basin and through the Pipe. As the basis of her inverse condemnation claim, Ray alleges the City's reconnection of its three pipes to the catch basin was an affirmative, positive, aggressive act.[2]

The City moved for summary judgment. After a hearing, the circuit court granted partial summary judgment to the City, dismissing Ray's claims for inverse condemnation, injunctive relief, and attorney's fees but allowing Ray's trespass claim to go forward.[3] The circuit court ruled Ray's inverse condemnation claim failed because the City committed no affirmative, positive, aggressive act. In a 2-1 decision, the court of appeals reversed the grant of summary judgment on Ray's inverse condemnation claim. *Ray v. City of Rock Hill*, 428 S.C. 358, 834 S.E.2d 464 (Ct. App. 2019). The majority held a genuine issue of material fact existed as to

[1] Ray also sued the South Carolina Department of Transportation, but that claim is not relevant to this appeal.

[2] Ray did not mention the City's reconnection of its pipes in her amended complaint; however, it is clear the City has consented to the consideration of this issue by the circuit court, the court of appeals, and this Court. We appreciate the City's commonsense approach to the amendment of Ray's complaint.

[3] Ray's trespass, injunctive relief, and attorney's fees claims are irrelevant to this appeal, but all have been dismissed.

whether the City engaged in an affirmative, positive, aggressive act. The dissent concluded the City's actions during the Sewer Project were mere "maintenance to an existing system" and did not support an inverse condemnation claim. *Id.* at 373, 834 S.E.2d at 472 (Short, J., concurring in part and dissenting in part). This Court granted the City's petition for a writ of certiorari to review the court of appeals' decision.

## Standard of Review

"An appellate court reviews a grant of summary judgment under the same standard applied by the trial court pursuant to Rule 56, SCRCP." *Lanham v. Blue Cross & Blue Shield of S.C., Inc.*, 349 S.C. 356, 361, 563 S.E.2d 331, 333 (2002). Summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "In determining whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn therefrom must be viewed in the light most favorable to the nonmoving party." *Lanham*, 349 S.C. at 361-62, 563 S.E.2d at 333. "Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law." *Id.* at 362, 563 S.E.2d at 333.

## Discussion

"An inverse condemnation occurs when a government agency commits a taking of private property without exercising its formal powers of eminent domain." *Hawkins v. City of Greenville*, 358 S.C. 280, 290, 594 S.E.2d 557, 562 (Ct. App. 2004). "To establish an inverse condemnation, a plaintiff must show: '(1) an affirmative, positive, aggressive act on the part of the governmental agency; (2) a taking; (3) the taking is for public use; and (4) the taking has some degree of permanence.'" *Id.* (quoting *Marietta Garage, Inc. v. S.C. Dep't of Pub. Safety*, 352 S.C. 95, 101, 572 S.E.2d 306, 308 (Ct. App. 2002); *Gray v. S.C. Dep't of Highways & Pub. Transp.*, 311 S.C. 144, 149, 427 S.E.2d 899, 902 (Ct. App. 1992), *overruled on other grounds by Hardin v. S.C. Dep't of Transp.*, 371 S.C. 598, 641 S.E.2d 437 (2007)).

"Whether the plaintiff has established a claim for inverse condemnation is a matter for the court to determine." *WRB Ltd. P'ship v. Cty. of Lexington*, 369 S.C. 30, 32, 630 S.E.2d 479, 481 (2006); *Cobb v. S.C. Dep't of Transp.*, 365 S.C. 360, 365, 618 S.E.2d 299, 301 (2005) ("[I]n an inverse condemnation case, the trial judge will determine whether a claim has been established; the issue of compensation may

then be submitted to a jury at either party's request."). Even though the trial court must decide the threshold question of whether a government entity's actions amount to an affirmative, positive, aggressive act, the question is one of <u>fact</u>, not law. If a genuine issue of material fact exists as to whether the government entity committed an affirmative, positive, aggressive act causing damage to private property, summary judgment is not proper. *See* Rule 56(c), SCRCP.

The court of appeals cited two grounds in support of its holding that a genuine issue of material fact existed as to whether the City engaged in an affirmative, positive, aggressive act by reconnecting its stormwater pipes and resuming the flow of water through the Pipe. First, the court of appeals held "questions of fact exist as to which pipes were damaged and in need of repair [during the Sewer Project]." *Ray*, 428 S.C. at 367, 834 S.E.2d at 469. Second, the court of appeals held a genuine issue of material fact existed as to whether the City engaged in an affirmative, positive, aggressive act "in reconnecting City pipes to the Pipe after the City admitted it did not have an easement and Ray told the City not to reconnect." *Id.* We will discuss these holdings below.

## I. The Sewer Project

At the court of appeals, there was some confusion as to the number of stormwater pipes the City severed in order to get to the sewer line below. Ray argued the City committed an affirmative, positive, aggressive act during the Sewer Project when it "disconnected several pipes as part of a construction project on College Avenue, including the pipe running beneath Ray's house," and later reconnected those pipes over her objection. During oral argument before the court of appeals, the City maintained that it severed only one of the three City pipes running into the catch basin. The City mistakenly contended that the flow of water into the Pipe did not cease during the Sewer Project because the other two City stormwater pipes remained connected to the catch basin. The court of appeals held there was a genuine issue of material fact as to which of the City's stormwater pipes "were damaged and in need of repair." *Id.* The court of appeals also held there was a genuine issue of material fact as to how many of the City's three stormwater pipes remained connected to the catch basin during the Sewer Project. The court of appeals held these two questions in turn created a genuine issue of material fact as to whether the City committed an affirmative, positive, aggressive act when it reconnected its pipe(s) to the catch basin.

The City now confirms that during the Sewer Project, it severed all three pipes running into the catch basin. The City also acknowledges the flow of stormwater from the catch basin through the Pipe ceased during the Sewer Project, and the City

acknowledges stormwater flow into the Pipe resumed when it reconnected its three pipes to its catch basin. Since there is now no dispute all three City pipes were severed and reconnected, the only question pertinent to our review of the grant of summary judgment is whether there is a genuine issue of material fact as to whether the City's reconnection of the City's three pipes to the catch basin—which allowed water to resume flowing through the Pipe—constituted an affirmative, positive, aggressive act by the City resulting in damage to the Property.

## II. Affirmative, Positive, Aggressive Act

As noted above, a plaintiff in an inverse condemnation proceeding must prove (1) an affirmative, positive, aggressive act on the part of the governmental agency; (2) a taking; (3) the taking is for a public use; and (4) the taking has some degree of permanence. *Hawkins*, 358 S.C. at 290, 594 S.E.2d at 562. In *WRB*, we noted that to prevail in an inverse condemnation action, "a plaintiff must prove 'an affirmative, aggressive, and positive act' by the government entity that caused the alleged damage to the plaintiff's property." 369 S.C. at 32, 630 S.E.2d at 481 (quoting *Berry's On Main, Inc. v. City of Columbia*, 277 S.C. 14, 16, 281 S.E.2d 796, 797 (1981); *Kline v. City of Columbia*, 249 S.C. 532, 536, 155 S.E.2d 597, 599 (1967)). "Allegations of mere failure to act are insufficient." *Hawkins*, 358 S.C. at 291, 594 S.E.2d at 563.

In *Hawkins*, the court of appeals discussed the affirmative, positive, aggressive act requirement in detail. In that case, Hawkins brought an inverse condemnation action against the City after his property was damaged by floodwater. The lower court granted summary judgment to the City, and the court of appeals affirmed, holding Hawkins "failed to allege any affirmative acts by the City which damaged the . . . property or otherwise diminished his rights in the property." *Id.* at 291, 594 S.E.2d at 562. The court of appeals explained most of the acts Hawkins alleged were mere "failures to act," such as his claim the City improperly allowed the development of neighboring parcels without replacing drainage pipes in the area. *Id.* at 291, 594 S.E.2d at 562-63. However, the court of appeals recognized Hawkins alleged two affirmative acts as the basis for his inverse condemnation claim: the City's replacement of a double-box culvert with a large arched pipe in a drainage creek near his property, and the City's installation of riprap material along the banks of the creek. Despite recognizing these two projects as "affirmative acts" rather than mere failures to act, the court of appeals held neither act amounted to an affirmative, positive, aggressive act because Hawkins failed to prove either act caused the flooding on his property. *Id.* at 291, 594 S.E.2d at 563.

The City argues that under *Hawkins*, its refusal to comply with Ray's demand that it not reconnect the three pipes to its catch basin in November 2012 was, as a

matter of law, merely a "failure to act," not an affirmative, positive, aggressive act. We disagree.  When the City reconnected its three pipes to the catch basin, it directed water into the catch basin and through the Pipe.  This is sufficient evidence to overcome summary judgment on the issue of whether the City merely "failed to act" with respect to the water flowing through the Pipe.  We also conclude Ray has presented sufficient evidence that the City's reconnection of its three pipes to the catch basin and the resumption of the flow of water through the Pipe caused damage to her property.  *See WRB Ltd. P'ship*, 369 S.C. at 32, 630 S.E.2d at 481 (noting an inverse condemnation plaintiff must prove the affirmative, positive, aggressive act "caused the alleged damage to the plaintiff's property").[4]

Under the unique facts and procedural history of this case, this is where the City's statute of limitations defense comes into play.  While the City argued the three-year statute of limitations in its brief to the court of appeals and in its petition for rehearing, the court of appeals did not rule upon the issue.  Ray does not dispute she became aware she might have a claim against the City as early as 2008 when she noticed her front porch steps were sagging.  That year, she contacted the City, and City employees told her of the Pipe running underground from College Avenue toward those steps.  Ray's right of action against the City for inverse condemnation is limited to three years from the date she discovered, or by the exercise of reasonable diligence should have discovered, she might have a claim against the City.  *See* S.C. Code Ann. § 15-3-530(3) (2005); *Dean v. Ruscon Corp.*, 321 S.C. 360, 363, 468 S.E.2d 645, 647 (1996) ("According to the discovery rule, the statute of limitations begins to run when a cause of action reasonably ought to have been discovered."). Ray did not commence this action until November 2012, so her claim for damages occurring more than three years prior to that date is barred by the statute of limitations.  Ray conceded this point during oral argument before this Court.  There is also no evidence that any damage occurring during the three years before this action was commenced was any greater than the damage that occurred before that time.  The twist in this case is that within days or a few weeks after Ray commenced this action, the City severed its three stormwater pipes from the catch basin in front of the Property as part of the Sewer Project, and at some point thereafter, reconnected the pipes.  Ray agrees that any claim for damages for inverse condemnation is limited

---

[4] The City also argues the circuit court properly granted summary judgment because there is no evidence the City installed the Pipe or originally caused stormwater to flow under the Property via the Pipe.  Though the City is correct no evidence in the record suggests the City installed the Pipe, the City has been transporting water into the Pipe via its stormwater pipes and catch basin beneath College Avenue for decades.

to damage to the Property occurring as a result of the City's reconnection of its three severed pipes to its catch basin.

The City argues Ray has not presented any evidence of damage to the Property attributable to the City's November 2012 reconnection of the three pipes to the catch basin. We disagree. Ray submitted the affidavit of Michael Leonard, a structural engineer, in opposition to the City's motion for summary judgment. Attached as an exhibit to Leonard's affidavit was a "supplemental report" Leonard prepared while the Sewer Project was ongoing. In his supplemental report, Leonard opined there would be increased water flow through the Pipe after the City reconnected its three pipes to the catch basin, which Leonard claimed would create a risk of increased structural damage to Ray's home. Viewed in the light most favorable to Ray, Leonard's report creates a genuine issue of material fact as to whether the City's reconnection of its pipes in November 2012 caused damage to the Property distinct from the damage caused by the flow of water through the Pipe up until that time. Of course, the circuit court will make the final determination whether Ray is able to carry her burden of proof on this issue at trial.

## Conclusion

We affirm the court of appeals as modified. We remand this matter to the circuit court for a determination on the merits as to whether the City's reconnection of its three stormwater pipes to the catch basin and the resumed flow of water through the Pipe constituted an affirmative, positive, aggressive act causing damage to the Property over and above any damage that had occurred before the three pipes were severed and reconnected. Given the posture of this case and the above discussion, Ray cannot recover for any damage to the Property caused by the flow of water though the Pipe before the City reconnected its three pipes to the catch basin in November 2012.

**AFFIRMED AS MODIFIED.**

**BEATTY, C.J., KITTREDGE and HEARN, JJ., concur. FEW, J., dissenting in a separate opinion.**

**JUSTICE FEW:** I write separately to make two points. First, the City of Rock Hill should not be piping storm water under the plaintiff's house. It is wrong. It does not matter to me who built the pipe or whose fault it is the plaintiff's house is sinking because of the water. The City should do the right thing and fix this problem.

Second, not all wrongs are subject to redress in our civil courts. The plaintiff's theory for inverse condemnation is the storm water running under her house constitutes a taking. To the extent that theory is valid, the taking occurred many years ago, either when the pipes were first installed or when the deterioration of the pipes began to harm her property. Under no circumstances did that taking occur later than 2008. As the majority concludes, therefore, the plaintiff failed to bring her action within the applicable limitations period. It makes no difference the City reconnected the pipes in 2012. The effect of that act was to continue to run storm water under property the plaintiff claims had already been taken. Whether it is correct to call this act "maintenance," as Judge Short did at the court of appeals, does not matter. There is simply no right of action available to this plaintiff under an inverse condemnation theory.

It is my opinion, therefore, the circuit court correctly dismissed the inverse condemnation claim.