# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

James Marlowe and Lori Marlowe, Respondents,

v.

South Carolina Department of Transportation (SCDOT), Petitioner.

Appellate Case No. 2023-001808

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Florence County
Michael G. Nettles, Circuit Court Judge

---

Opinion No. 28271
Heard February 11, 2025 – Filed March 26, 2025

---

## AFFIRMED IN PART AND REVERSED IN PART

---

Carmen Vaughn Ganjehsani, of Richardson Plowden & Robinson, PA, of Columbia, for Petitioner.

Joseph Clay Hopkins, of Hopkins Law Firm, LLC, of Charleston, for Respondents.

---

**JUSTICE JAMES:** James and Lori Marlowe own a home located on Highway 378 in Florence County. In 2015, the South Carolina Department of Transportation (SCDOT) began construction on a stretch of Highway 378 adjacent to the home.

While the construction was ongoing, the home flooded in both October 2015 and October 2016 during major storm events. The Marlowes brought this action against SCDOT, alleging causes of action for inverse condemnation, conversion, due process, and negligence. SCDOT moved for summary judgment, and the circuit court granted the motion on all claims. The court of appeals (1) affirmed the circuit court on the Marlowes' negligence claim; (2) reversed the circuit court on the inverse condemnation claim; and (3) held the Stormwater Management and Sediment Reduction Act (Stormwater Act) did not immunize SCDOT from liability. *Marlowe v. S.C. Dep't of Transp.*, 441 S.C. 319, 893 S.E.2d 21 (Ct. App. 2023). This Court granted SCDOT's petition for a writ of certiorari on the inverse condemnation and Stormwater Act issues. The Marlowes did not file a cross petition on the negligence issue. We affirm on the Stormwater Act issue and reverse on the inverse condemnation issue.

## I. Background

The background of this case is thoroughly set out in the court of appeals' opinion, *see id.* at 324-28, 893 S.E.2d at 24-26, but we will summarize pertinent facts here. The Marlowes own a home on Highway 378 in Florence County. In 2013, SCDOT conducted a hydraulic design study in preparation for a project to widen and realign approximately 8.65 miles of U.S. Highway 378 (the Project), including the portion of the road adjacent to the home. While the new four-lane Highway 378 was being built, the existing two-lane road remained in place. The Project "significantly" elevated the new roadway over the first floor of the Marlowe residence and the adjacent grade of the residence. The Project also involved the installation of new bridges and drainage infrastructure along the roadway, including replacing the existing box culvert adjacent to the Marlowes' property with a larger culvert due to the widening of the road.

While the Project was ongoing, the home flooded twice—once in October 2015 and again in October 2016. In October 2015, the greatest four-day precipitation total recorded in the region was 23.35 inches, corresponding to a return interval of greater than 1000 years. Flooding in the area was catastrophic, and the Marlowes were forced to move out and begin extensive repairs with assistance from the Federal Emergency Management Agency and personal loans. At the time of the 2015 flood, the existing two-lane road remained in place and the new wider and elevated roadbed had been constructed, but the new larger culvert had not been completed.

In October 2016, around eight weeks after the Marlowes were able to move back into their home, Hurricane Matthew passed over the South Carolina coast and brought significant rainfall. The greatest 4-day precipitation total recorded in the region surrounding the Marlowes' home was 13.7 inches, corresponding to a return interval of between 200 to 500 years. The home flooded again, and the Marlowes again had to move out. The installation of the new culvert was not completed at the time Hurricane Matthew flooded the home.

In May 2017, the Marlowes commenced this action alleging causes of action for inverse condemnation, conversion, due process, and negligence. In June 2017, in response to complaints about the Project, SCDOT performed an additional investigation and completed an addendum to its project summary. The addendum confirmed the existing culvert adjacent to the home was still in place during both flood events while the new culvert was under construction. SCDOT determined the existing culvert would overtop[1] for discharges associated with a 25-year rain event and potentially a 10-year rain event. The addendum also stated the new culvert would, once completed, provide approximately three times the flow area of the existing culvert and would result in a reduction in water surface elevations upstream of the crossing for floods up to the 100-year event.

The Marlowes retained engineer Jason Gregorie of Applied Building Sciences to assess the cause and extent of the flood damage. An excerpt of his deposition was included in the circuit court's summary judgment order, but the full transcript is not in the record. The following excerpts are in the circuit court order:

**A**: What I'm going to testify about here today is what I state in my report, is that if the prior U.S. 378 existed and the new U.S. 378 had not been constructed. I can say – I do say to a reasonable degree of engineering certainty that the flood depth would have been less on the Marlowe property, and I believe the impact on the Marlowe property would have been less. I say that it's possible that it would have been prevented.

. . .

---

[1] Overtopping occurs when a drainage system is overburdened to the point it does not divert water away from a roadway and the roadway floods. *See Marlowe*, 441 S.C. at 327, 893 S.E.2d at 25.

**A**: I can say to a reasonable degree of engineering certainty that the construction project contributed to the flooding. I believe that it increased the flood depth on the property, but I cannot say definitely that if the project had not existed that it would have completely prevented the flooding.

. . .

**A**: Well, I – to a reasonable degree of certainty, I say that it has affected the depth, the flood depth of the property. I think I say that it may – may have or there was a possibility it would have prevented the flooding inside the structure altogether.

**Q**: May have?

**A**: That's correct.

**Q**: So it still – you agree that even with the old U.S. 378 with these two rain events the Marlowe property still could have flooded?

**A**: It's possible, yes.

The Marlowes deposed SCDOT employee Stanley Roof, a hydrologic engineer, who assisted in the preparation of the Project. Roof testified he prepared an "existing conditions model" (used in part to determine when a road would overtop). He testified the model did not consider the higher elevation of the new roadway, because SCDOT does not model existing and proposed conditions at the same time. Roof also testified he did not consider whether the higher elevation of the new roadway would potentially cause water to flow onto the Property. Two other SCDOT employees, resident construction engineer Jamie Poston and program manager Brian Dix, testified nothing could have been done differently with the Project to prevent the flooding of the home during the two rain events.

After reviewing Roof's deposition, Gregorie submitted an affidavit supplementing his prior opinions and concluding the design of the Project failed to account for the drainage and flooding implications during "interim critical stages of construction," such as the simultaneous existence of the existing two-lane roadway and culvert with the elevated new four-lane roadway, and, as a result, "was a substantial contributor to the flood damages to the Marlowe Property."

## II. Standard of Review

"Appellate courts apply the same standard of review applied by the trial court to review the grant of summary judgment pursuant to Rule 56(c) of the South Carolina Rules of Civil Procedure." *Williams v. Jeffcoat*, 444 S.C. 224, 233, 906 S.E.2d 588, 593 (2024) (citing *Knight v. Austin*, 396 S.C. 518, 521, 722 S.E.2d 802, 804 (2012)). Summary judgment is proper when the pleadings, depositions, affidavits, and discovery on file show there is no genuine issue of material fact such that the moving party must prevail as a matter of law. *See* Rule 56(c), SCRCP; *Knight*, 396 S.C. at 521-22, 722 S.E.2d at 804; *Kitchen Planners, LLC v. Friedman*, 440 S.C. 456, 463, 892 S.E.2d 297, 301 (2023) (eliminating the "mere scintilla" standard and holding the proper standard is the "genuine issue of material fact" standard set forth in the text of Rule 56(c), SCRCP). On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in the light most favorable to the non-moving party. *Williams*, 444 S.C. at 233-34, 906 S.E.2d at 593 (citing *USAA Prop. & Cas. Ins. Co. v. Clegg*, 377 S.C. 643, 653, 661 S.E.2d 791, 796 (2008)).

## III. Stormwater Management and Sediment Reduction Act

The court of appeals held the circuit court erred in ruling the Stormwater Act immunized SCDOT from liability. *Marlowe*, 441 S.C. at 337, 893 S.E.2d at 31. We agree with the court of appeals and affirm on this issue. Section 48-14-160 of the Stormwater Act provides:

> Nothing contained in this chapter and no action or failure to act under this chapter may be construed:
>
> (1) to *impose any liability* on the State, department, districts, local governments, or other agencies, officers, or employees thereof for the recovery of damages caused by such action or failure to act; or
>
> (2) to *relieve the person* engaged in the land disturbing activity of the duties, obligations, responsibilities, or *liabilities arising from or incident to the operations* associated with the land disturbing activity.

S.C. Code Ann. § 48-14-160 (2008) (emphasis added). The plain language of section 48-14-160 neither imposes liability on SCDOT nor immunizes SCDOT from liability in this case.

## IV. Inverse Condemnation

The court of appeals held there is sufficient evidence in the record to allow the inverse condemnation claim to escape summary judgment. We disagree, as there is not sufficient evidence on the causation issue for this claim to go forward.

"An inverse condemnation occurs when a government agency commits a taking of private property without exercising its formal powers of eminent domain." *Ray v. City of Rock Hill*, 434 S.C. 39, 45, 862 S.E.2d 259, 262 (2021) (quoting *Hawkins v. City of Greenville*, 358 S.C. 280, 290, 594 S.E.2d 557, 562 (Ct. App. 2004)). "To establish an inverse condemnation, a plaintiff must show: '(1) an affirmative, positive, aggressive act on the part of the governmental agency; (2) a taking; (3) the taking is for public use; and (4) the taking has some degree of permanence.'" *Id.* (quoting *Hawkins*, 358 S.C. at 290, 594 S.E.2d at 562). The plaintiff must also establish the affirmative, positive, aggressive act by the government caused the plaintiff's damages. *See Hawkins*, 358 S.C. at 291-92, 594 S.E.2d at 563 (affirming the trial court's grant of summary judgment based on lack of any evidence showing an affirmative, positive, aggressive act which would have tended to prove the government entity's actions caused or precipitated the flooding of the plaintiff's property). "Allegations of mere failure to act are insufficient." *Ray*, 434 S.C. at 47, 862 S.E.2d at 263 (quoting *Hawkins*, 358 S.C. at 291, 594 S.E.2d at 563).

"Whether the plaintiff has established a claim for inverse condemnation is a matter for the court to determine." *Ray*, 434 S.C. at 45, 862 S.E.2d at 262 (quoting *WRB Ltd. P'ship v. Cnty. of Lexington*, 369 S.C. 30, 32, 630 S.E.2d 479, 481 (2006)); *see also Cobb v. S.C. Dep't of Transp.*, 365 S.C. 360, 365, 618 S.E.2d 299, 301 (2005) ("[I]n an inverse condemnation case, the trial judge will determine whether a claim has been established; the issue of compensation may then be submitted to a jury at either party's request."). "Even though the trial court must decide the threshold question of whether a government entity's actions amount to an affirmative, positive, aggressive act, the question is one of <u>fact</u>, not law." *Ray*, 434 S.C. at 45, 862 S.E.2d at 262. "If a genuine issue of material fact exists as to whether the government entity committed an affirmative, positive, aggressive act causing

damage to private property, summary judgment is not proper." *Id.* (citing Rule 56(c), SCRCP).

"[B]efore expert testimony is admissible upon the question of the causal connection between plaintiff's injuries and the acts of the defendant, the testimony must satisfy the 'most probably' rule." *Baughman v. Am. Tel. & Tel. Co.*, 306 S.C. 101, 111, 410 S.E.2d 537, 543 (1991) (holding expert's testimony did not rise to the "most probably" level when expert's opinion was "within the realm of *possibility* only, not the required standard of *probability*"); *see also Clark v. Greenville Cnty*, 313 S.C. 205, 208-09, 437 S.E.2d 117, 118-19 (1993) (holding the circuit court properly granted summary judgment on inverse condemnation claim in favor of government entity when the plaintiff's expert's opinion failed test for admissibility of expert testimony because the expert failed to opine that the result "most probably" came from the cause alleged).

Here, the court of appeals distinguished between mere failures to act and acts supporting an inverse condemnation claim, holding the "failure to install an adequate culvert is, by its very nature, not an affirmative act," while also noting "[t]he construction of an elevated highway is an affirmative act, but whether it is an 'affirmative, positive, aggressive act' for the purposes of inverse condemnation depends on causation." *Marlowe*, 441 S.C. at 333-34, 893 S.E.2d at 29 (footnote omitted). Relying primarily on Gregorie's testimony, the court of appeals held there was a genuine issue of material fact as to whether SCDOT's construction of the elevated highway caused the flooding of the Property. SCDOT argues summary judgment was proper because Gregorie did not testify the Project most probably caused the entirety of the flooding of the home or that the flooding most probably would not have occurred at all had the new roadway not been constructed as it was.

The evidence in the record and all reasonable inferences derived therefrom, taken in the light most favorable to the Marlowes, establish the following: the two floods occurred while the new roadway was under construction; the new roadway was constructed at a significantly higher elevation than the old roadway; the old roadway was adjacent to the home and was between the new roadway and the home; the new culvert designed to serve the new roadway had not been completed at the time of the two floods; the old culvert, coupled with the simultaneous existence of the new roadway and the old roadway, caused some water to flood the home when it would have otherwise flowed off the side of the old roadway away from the home; if the new roadway had not been constructed, "the flood depth would have been less

on the Marlowe property;" and the construction of the new roadway "was a substantial contributor to the flood damages to the Marlowe Property."

For the causation issue to survive summary judgment, there must be evidence that would allow the fact finder to determine, without speculating, how much of the flooding was caused by the construction of the new roadway. However, the evidence, even including Gregorie's "substantial contributor" testimony, does not rise above speculation on the causation issue. Gregorie could only testify there was "a possibility" the flooding of the Marlowes' home would not have occurred if the new roadway had not been constructed as it was. We must therefore reverse the court of appeals and reinstate the grant of summary judgment.

### V. Conclusion

For the foregoing reasons, we affirm the court of appeals in part and reverse in part.

**AFFIRMED IN PART AND REVERSED IN PART.**

**KITTREDGE, C.J., FEW, HILL, JJ., and Acting Justice Angela Johnson Moss, concur.**